**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Warren J. BELLARD,**
**Defendant-Appellee.**

**No. 80–3872.**

United States Court of Appeals,
Fifth Circuit.

April 23, 1982.

Leven H. Harris, Asst. U. S. Atty., Shreveport, La., Harold Jenkins, Asst. Gen. Counsel for Postsecondary Ed., U. S. Dept. of Ed., Washington, D. C., for plaintiff-appellant.

Edwards, Stefanski & Barousse, Jim Cunningham, Crowley, La., for defendant-appellee.

Before COLEMAN, REAVLEY, and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

The district court ruled that the United States is without a common-law right to indemnification from student borrowers who default on loans guaranteed under the Federal Insured Student Loan Program, Tit. IV–B of the Higher Education Act of 1965, 20 U.S.C. § 1071 *et seq.* Neither the statutory provision relied on by the district court nor the program's legislative history discloses a congressional intention to deny to the Government that right of direct recovery which would otherwise arise from its agreement to serve as the borrower's guarantor. The judgment of the district court is, accordingly, reversed.

## I.

In August of 1969 defendant-appellee Warren J. Bellard borrowed $1400 from Parks School of Business to finance his education at a business college in Louisiana.[1]

---

1. The Parks School of Business is an educational institution located in Denver, Colorado. It appears from the scant information in the record that Bellard executed his promissory note in Lafayette, Louisiana, and that the proceeds were applied to his tuition at the Spencer Business College in Lafayette. It further appears from the record that the Parks School assigned Bellard's note to the Labor Finance Industrial Bank of Denver, Colorado, and that it was to

Bellard acknowledged his obligation by execution of a document entitled "Promissory Note, Federal Insured Student Loan Program," which recited, in addition to the usual promises to repay, that he understood that the lender had applied for federal loan insurance on the monies advanced pursuant to the note, that he agreed to pay the lender's federal loan insurance premiums, and that the terms of the note would be interpreted in light of federal regulations pertaining to the Higher Education Act of 1965 (the Act).

The terms of the loan tracked the terms dictated by the Act as preconditions to qualification for federal loan insurance. The note was unsecured, section 427(a)(2)(A), 20 U.S.C. § 1077(a)(2)(A). Interest was set at the rate of seven percent simple per annum, section 427(b), 20 U.S.C. § 1077(b), *as amended by* Act of Aug. 3, 1968, Pub.L.No.90–460, § 2(a)(1), 82 Stat. 635, with payment to be deferred at the option of the lender until commencement of the loan repayment period, § 427(a)(2)(D), 20 U.S.C. § 1077(a)(2)(D). The lender exonerated Bellard of liability for any portion of the interest payable by the United States government. Section 427(a)(2)(E), 20 U.S.C. § 1077(a)(2)(E), *as amended by* Act of Oct. 16, 1968, Pub.L.No.90–575, Title I, § 113(b)(2), 82 Stat. 1021.[2] Repayment of principal and accrued interest, if any, was agreed to begin twelve months after Bellard stopped carrying at least half of a

normal full-time academic workload at an eligible institution, section 427(a)(2)(B), 20 U.S.C. § 1077(a)(2)(B); it could be further postponed up to three years, while Bellard served his country in the armed forces, the Peace Corps, or as a VISTA volunteer. Section 427(a)(2)(C), 20 U.S.C. § 1077(a)(2)(C), *as amended by* Act of Oct. 16, 1968, Pub.L.No.90–575, Title I §§ 116(b)(2), 117(c), 82 Stat. 1021, 1023. Bellard's liability would be cancelled completely in the event of his death or total and permanent disability. Section 437(a), 20 U.S.C. § 1087(a), *as added by* Act of Oct. 16, 1968, Pub.L.No.90–575, Title I, § 113(a), 82 Stat. 1020.

Bellard dropped out of school in late 1969. The note came due in late 1970, but Bellard made no payments. On April 10, 1974, the United States paid the lender's insurance claim. Its attempts at collection from Bellard met with no greater success than had the lenders. On October 17, 1979, it instituted action against him to recover the principal amount of the note and the interest accrued.

Debate in the district court focused on the nature of the interest asserted by the United States. Characterization of the interest was critical: on it would turn the determination of whether the six-year prescriptive period limiting actions by the Government on a contract, 28 U.S.C. § 2415(a), had run.[3] Bellard contended

---

the latter institution that the United States made payment upon Bellard's default. The limited significance of these facts is explored in our inquiry into the appropriate choice of law, *see* note 6, *infra*.

**2.** Section 428(a)(3)(A), 20 U.S.C. § 1078(a)(3)(A), generally provides that the United States shall pay to lenders interest accruing prior to the beginning of the repayment period for students who qualify as in need of assistance. Section 438, 20 U.S.C. § 1087–1, *as added by* Act of June 23, 1972, Pub.L.No. 92–318, Title I, § 132E(a), 86 Stat. 264 extended the federal government subsidy of student loan interest to the excess of the current estimated average interest rate over the rate chargeable to the student; unlike § 428(a)(3)(A), however, § 438 was not in effect at the time Bellard made his borrowings.

**3.** 28 U.S.C. § 2415(a) provides in pertinent part:

[E]xcept as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues * * *. *Provided,* That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment * * *.

This general federal statute of limitation applies in lieu of the otherwise applicable state statute of limitations. *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); *accord United States v. Sellers,* 487 F.2d 1268 (5th Cir. 1973); *United States v. Winter,* 319 F.Supp. 520 (E.D.La.1970).

that section 430(b) of the Act, 20 U.S.C. § 1080(b), which provides that the lender's interest in the loan is to be assigned to the Government upon its payment of the lender's claim, states the entirety of the rights accruing to the Government upon payment of a lender's claim. As an assignee the Government would accede to precisely those interests held by the lender-assignor; its derivative cause of action against Bellard would have accrued upon his default in late 1970 or early 1971 [4] and expired almost three years before suit was filed. The Government contested Bellard's characterization, arguing that it sued on the note not in its status as the original lender's assignee, but as a surety whose cause of action accrued when it made good Bellard's obliga-

tion. By the United States' reckoning, it filed suit with six months to spare.

The district court decided that section 430(b) reflected the Congress' intention to limit the Government's rights against student borrowers to the derivative interest of an assignee. It sustained Bellard's affirmative defense, and granted him summary judgment. The Government appeals.

## II.

Bellard does not deny that the Government acted as the guarantor [5] of his loan. His position is advisedly taken: the United States' obligations under the Federal Insured Student Loan Program bring it squarely within hornbook definitions of a guarantor.[6] The hallmark of a contract of

---

4. Under section 430(e)(2), 20 U.S.C. § 1080(e)(2)

> the term "default" includes only such defaults as have existed for (A) one hundred and twenty days in the case of a loan which is repayable in monthly installments, or (B) one hundred and eighty days in the case of a loan which is repayable in less frequent installments.

The record fails to indicate exactly when Bellard dropped out of school, or which of the § 430(e)(2) grace periods was applicable to his obligation.

5. The undertaking of the United States in insuring a student loan under the Federal Insured Student Loan Program has aspects of both suretyship and guaranty. As under a suretyship agreement, the application for insurance is signed by both borrower and lender and approved by the Department of Education. As under a guaranty, the Department's promise to reimburse the lender is given at the time when the debt is contracted by the borrower and so may be considered connected with it. As is also true under a guaranty, the Department is not primarily liable with the borrower for his performance; the Department's performance is conditional on the exercise of due diligence by the lender in attempting collection from the borrower. *See* 45 C.F.R. § 177.48 (1974); 38 Am.Jur.2d *Guaranty* §§ 14, 15 (1968).

The distinction between suretyship and guaranty is often blurred. This Court, for example, has stated that when the contract of guaranty is absolute or unconditional, binding the guarantor to pay a definite sum at a specified time, a contract of suretyship is not distinguishable from a contract of guaranty. *Texas Water Supply Corp. v. Reconstruction Finance Corp.,* 204 F.2d 190 (5th Cir. 1953). The Restatement of the Law of Security, § 82, comment g, goes even further and adopts the word "surety" to

describe all accessorial obligations, whether primary or secondary. Consequently, it is generally unnecessary to distinguish between the two classes of undertaking. Where the problem is one of the rights of a surety or guarantor against the principal debtor, as in the case *sub judice*, the term "surety" in the broad sense suffices.

6. The question presented by this action, involving the rights of the United States arising under a nationwide federal program, is governed by federal law. *United States v. Kimball Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979); *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). The difficult task of deciding whether principles of federal common law need be tailored, or state law be adopted, may be left for another day. In the absence of suggestion by the Government that uniform federal rules must be formulated to protect the objectives of the nationwide program, we will be guided in our resolution of the issue before us by the principles of the otherwise controlling state law.

There appear no drawbacks to this course. Louisiana law, which governs contracts of guaranty entered into and to be performed in Louisiana notwithstanding that the contract secures credit in another state, *Calcasieu-Marine Nat'l Bank of Lake Charles v. Am. Employers Ins. Co.,* 533 F.2d 290, 295 n.5 (5th Cir.), *cert. denied sub nom., Louisiana Bank & Trust Co. of Crowley v. Employers Liability Assurance Corp., Ltd.,* 429 U.S. 422, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976); *Lachman v. Block,* 47 La. Ann. 505, 17 So. 153 (La.1894), is, in pertinent part, essentially the same as that of other states, *cf., Calcasieu-Marine* at 295; the distinctions which exist are not here determinative. *See* note 8, *infra.*

guaranty is, of course, an agreement, integrated with the primary undertaking and made enforceable by consideration, to answer for the debt of another upon that other's failure to pay. 38 Am.Jur.2d *Guaranty* §§ 14, 15 (1968); La.Civ.Code Ann. art. 3035 (West); *Louisiana Bank & Trust, Crowley v. Boutte,* 309 So.2d 274, 277 n.4 (La.1975); *American Bank & Trust Co. v. Blue Bird Restaurant & Lounge, Inc.,* 279 So.2d 720, 722 (La.App.1973), *affirmed,* 290 So.2d 302 (La.1974).[7] Just such an agreement was made by the United States with respect to Bellard's student loan. The Government's participation was evident from the transaction's inception in the meticulous adherence of the loan agreement to the Act's requisites for qualification for federal insurance. Section 427, 20 U.S.C. § 1077; *see* Part I, *supra.* The Government's insistence on the use of precisely those terms in exchange for its promise to hold the lender harmless upon the borrower's default, section 430(a), 20 U.S.C. § 1080(a), manifests a careful and comprehensive design, *Hayes v. Human Resources Administration of the City of New York,* 648 F.2d 110, 111–12 (2d Cir. 1981); *American Bank of San Antonio v. United States,* 633 F.2d 543, 545–46 (Ct.Cl.1980); *De Jesus Chavez v. LTV Aerospace Corp.,* 412 F.Supp. 4 (N.D.Tex.1976), to further the national interest in higher education by inducing the private sector to make available necessary financing on favorable terms. Section 421(a), 20 U.S.C. § 1071(a). The interdependencies among the borrower, the lender, and the United States resulting from that design are a situational adaptation of long-recognized principles of guaranty. *Grove City College v. Harris,* 500 F.Supp. 253, 260, 268 (W.D.Pa.1980); *accord, United States v. Lujan,* 520 F.Supp. 282 (D.N.M.1980); *Phillips v. Pennsylvania Higher Education Assistance Agency,* 497 F.Supp. 712 (W.D.Pa.1980), *rev'd on other grounds,* 657 F.2d 554 (3d Cir. 1981); *United States v. Wilson,* 478 F.Supp. 488 (M.D. Pa.1979); *United States v. Winter,* 319 F.Supp. 520 (E.D.La.1970); *contra United States v. Lucas,* 516 F.Supp. at 936 (E.D. Tex.1981) (holding that the repeated use of the word "insurance" throughout the Act determines the character of the participants' relationships and limits the Government to the rights of an assignee).

■ At common law, the reciprocity of obligations created by this tripartite relationship was made complete by recognition of a right of recourse of the guarantor against the debtor, arising upon the guarantor's satisfaction of the debt, 38 Am. Jur.2d *Guaranty* § 127 (1968); La.Civil Code Ann. art. 3052; *Louisiana Bank & Trust Co., Crowley* at 278 n.7; *Fidelity &*

---

7. The Act's use of the word "insurance" to refer to the obligation undertaken by the federal government is not determinative of the legal attributes of that obligation. *Contra, United States v. Lucas,* 516 F.Supp. 934, 936 (E.D.Tex. 1981). Rather, the substantive rights and duties accruing to the United States properly are determined only upon appreciation of the nature of the relationships contemplated by the statutory scheme. *Trans-Bay Eng'rs & Builders, Inc. v. Hills,* 551 F.2d 370, 377–78 (D.C.Cir. 1976).

Nor is it of significance that the lender is obligated to pay the Government a premium for the "insurance." Compensated surety contracts are not converted into contracts of insurance simply because the third party is compensated.

While it is a rule that the courts, in construing an ambiguous provision in a compensated surety contract, apply the rules applicable to insurance contracts, and while insurance contracts are in many respects similar to surety company contracts, yet, it is said, there is a wide difference between the two contracts. Insurance has been defined as a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event; whereas a contract of suretyship is one to answer for the debt, default or miscarriage of another, and the nature of the contract is not altered because made by a corporation for compensation. The contract creates a tripartite relation between the party secured, the principal obligor, and the surety, and the rights, remedies and defenses of a surety cannot be disassociated from this relationship although the contract is called one of insurance.

*Madison Co. Farmers Ass'n v. Amer. Employers Ins. Co.,* 209 F.2d 581, 584 (8th Cir. 1954) *quoted in United States v. Stevenson,* Civil No. C–80–100, mem. op. at 3 (E.D.Wa. Dec. 8, 1980) (holding the Government to be a guarantor of federal insured student loans).

*Deposit Co. of Maryland v. Claiborne Parish School Board,* 11 F.2d 404 (W.D.La.1926), 40 F.2d 577 (5th Cir. 1930).[8] Under presently prevailing concepts of guaranty, as at the common law, this personal right of indemnification from a principal debtor exists by "nature of the contract of suretyship," *Louisiana Bank & Trust Co., Crowley* at 278–79 n.7, and co-exists with any right of subrogation against the debtor which may have been acquired by the guarantor from the lender upon payment of the claim, *id.*; La. Civil Code Ann. art. 3053 (West). That independent, inherent interest in indemnification inures to the benefit of the guarantor when it satisfies the borrower's delinquent obligation; the prescriptive period begins on that date. *United States Lines, Inc. v. United States,* 470 F.2d 487, 489 (5th Cir. 1972); 38 Am.Jur.2d *Guaranty* § 127 (1968); A. Stearns, *The Law of Suretyship,* 5th ed. 1951. These accepted principles of guaranty would, in the absence of an express legislative directive to the contrary, extend to the United States a right to recover directly from Bellard accruing upon its 1974 payment of a lender's claim. Bellard's argument that section 430(b) of the Act is such a contrary directive necessitates examination of that provision, and its legislative history.

### III.

■ Certain firmly established principles of statutory construction guide analysis of the effect of Congress' express provision of a remedy which differs from that normally arising out of the relationships authorized by the statutory scheme. The first

reflects the reluctance of the courts to find that legislative enactments are in derogation of common law. Changes in or abrogation of the common law must be clearly and plainly expressed by the legislature, *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 2758, 61 L.Ed.2d 521 (1979); *Isbrandsten Co. v. Johnson,* 343 U.S. 779, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952); even where such an intention is explicit, the scope of the common law will be constrained no further than the fair import of the statute's language requires. *United States v. Mead,* 426 F.2d 118, 123 (9th Cir. 1970); *United States v. Borin,* 209 F.2d 145 (5th Cir. 1954), *cert. denied,* 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (1955). The principle is reinforced when the beneficiary of the common law right is the Government. A conclusion that the sovereign has been denied rights which it could otherwise properly claim will be "warranted if exacted by the most express language, or by such overwhelming implication from the text as would leave no room for any other reasonable construction," *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909); *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 686, 91 L.Ed. 884 (1947); *Intracoastal Transportation, Inc. v. Decatur County, Georgia,* 482 F.2d 361, 367 n.16 (5th Cir. 1973).

■ Against this reasoned caution Bellard asks us to weigh his contention that section 430(b), 20 U.S.C. § 1080(b), denies the Government the right to seek indemnification from defaulting student borrowers. Section 430(b) provides that[9]

---

**8.** A little-used provision of Louisiana law would appear to recognize the guarantor's right to indemnification from the defaulting borrower even in the absence of the borrower's knowledge of the guarantor's promise to make good his debt. La.Civil Code Ann. art. 3038 (West) provides that

[a] man may be surety without the order or even the knowledge of the person for whom he becomes surety.

Reliance on this provision is unnecessary. Despite his protestations to the contrary, Bellard knew or should have been aware from the terms of his promissory note that he was, by

attempting to secure a federally insured student loan, consenting to the Government's role as a guarantor. *Joe Balestrieri & Co. v. Commissioner of Internal Revenue,* 177 F.2d 867, 872 (9th Cir. 1949); *compare Amer. Bank & Trust* at 723.

**9.** Subsection (a) referred to in § 430(b) provides that:

Upon default by the student borrower on any loan covered by Federal loan insurance pursuant to this part, and prior to the commencement of suit or other enforcement proceedings upon security for that loan, the insurance beneficiary shall promptly notify the

Upon payment of the amount of the loss pursuant to subsection (a) of this section, the United States shall be subrogated for all of the rights of the holder of the obligation upon the insured loan and shall be entitled to an assignment of the note or other evidence of the insured loan by the insurance beneficiary...

The provision certainly grants to the United States the right to succeed to the lender's claim upon satisfaction of the defaulting borrower's obligation. But it does not by its terms address the availability of the remedy of indemnification, which would, in normal circumstances, accrue to the Government by virtue of its role as a guarantor. Nor does it, in securing to the United States the rights of an assignee, by necessary implication deny the availability of a common law right of indemnification: the statutory and common law remedies are not mutually exclusive, but complementary. *Louisiana Bank & Trust Co., Crowley* at 278 n.7. Section 430(b) cannot in its silence be said to provide the conclusive evidence of abrogation of a common law remedy requisite to denial of that right to the sovereign.[10] *Compare Federal Election Commission v. Democratic Senatorial Campaign Committee,* — U.S. —, 102 S.Ct. 38, 43–44, 70 L.Ed.2d 23 (1981) *and Whirlpool*

*Corp. v. Marshall,* 445 U.S. 1, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980) *with Rodriguez v. Compass Shipping Co., Ltd.,* 451 U.S. 596, 101 S.Ct. 1945, 1950, 68 L.Ed.2d 472 (1981).

Nor may an intention to abrogate the common law right of indemnification fairly be implied from the remainder of the statute. Indeed, the only other provision cited to this Court by the parties supports the contrary conclusion. Section 432(a)(6) expressly reserves to the Government the right to "*enforce*, pay, compromise, waive, or release any *right*, title, *claim*, lien, or demand *however acquired*, including any equity or any right of redemption," 20 U.S.C. § 1082(a)(6) (emphasis added). The broad language of this section easily encompasses common law rights arising by the nature of the obligations undertaken by the Government.

Finally, search of the legislative history of the Act turns up no evidence of a congressional intent to abandon the right of indemnification. There is no mention of section 430(b) throughout the extensive proceedings conducted by the House and Senate in connection with the Act. The few comments made in the floor debates on the Act bearing at all on interpretation of that section show, not a desire to limit the federal government's recourse against defaulting

---

Secretary, and the Secretary shall if requested (at that time or after further collection efforts) by the beneficiary, or may on his own motion, if the insurance is still in effect, pay to the beneficiary the amount of the loss sustained by the insured upon that loan as soon as that amount has been determined. The "amount of the loss" on any loan shall, for the purposes of this subsection and subsection (b) of this section, be deemed to be an amount equal to the unpaid balance of the principal amount and accrued interest, including interest accruing from the date of submission of a valid default claim (as determined by the Secretary) to the date on which payment is authorized by the Secretary, reduced to the extent required by section 1075(b) of this title. Such beneficiary shall be required to meet the standards of due diligence in the collection of the loan. The Secretary shall make the determination required to carry out the provisions of this section not later than ninety days after the notification by the insurance beneficiary and shall make payment in full on the amount of

the beneficiary's loss pending completion of his due diligence investigation.
The last sentence of this provision became effective on January 1, 1981. *See* Act of Oct. 3, 1980, P.L. 96–374, Title IV, § 422, Title XIII, § 1393(b)(4), 94 Stat. 1432, 1504.

10. In similar circumstances where the Congress has created a statutory remedy not inconsistent with otherwise accruing common law rights, this Court has sustained the viability of a common law remedy as an alternative to enforcement through statutory mechanisms. *Mt. Sinai Hospital of Greater Miami, Inc. v. Weinberger,* 517 F.2d 329, 338 (5th Cir. 1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976) held that Congress' express provision in the Medicare Act for recovery of overpayments through adjustment of subsequent payments did not abrogate the Government's common law right to recoupment. *Henry v. United States,* 424 F.2d 677, 679 (5th Cir. 1970) found the False Claims Act not to supplant, but merely supply a remedy alternative to, an action in common law fraud.

borrowers, but a concern for the extent of the Government's potential liability and an interest in minimizing its losses.[11] Against this background, we cannot conclude that the Congress, by granting the Government remedies of an assignee, announced its intention to deny the Government indemnification from students whose obligations it guaranteed.[12]

## IV.

■ The United States' right to seek indemnification against Bellard accrued upon its April 1974 payment of the lender's claim. This action, commenced in October of 1979, is not barred by the six-year prescriptive period limiting actions by the Government on contractual rights. The district court's grant of summary judgment in favor of Bellard on the ground that the Government's rights had expired is, accordingly, reversed, and the cause is remanded for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

11. *See* 111 Cong.Rec. 21887 (1965) (Rep. Brademas) (characterizing the program as analogous to the Federal Housing Administration's guaranty of commercial housing loans); 111 Cong.Rec. 21899 (1965) (Rep. Mink) (explaining provisions in the bill requiring the lender to make all reasonable efforts to collect from the student before claiming against the Government as guarantor); 111 Cong.Rec. 21932 (1965) (Rep. Green) (explaining that the loans would be made and managed by financial institutions rather than educational institutions, in an attempt to avoid the high rate of default experienced with the university-administered National Defense Education Act Loan Program); 111 Cong.Rec. 22615 (1965) (Sen. Hartke) (emphasizing that the loans would be made by financial institutions rather than the Government, but that the Government would back the loans as was done with housing loans).

Under the housing loan programs referred to in the course of the floor debates, the Government may obtain a deficiency judgment against defaulting mortgagors by exercise of the inde-

pendent right of indemnity accruing to it by virtue of its guaranty agreement. *United States v. Wells*, 403 F.2d 596, 597 n.1, 598 (5th Cir. 1968) (finding that right to accrue under the Vendee Account Loan Program, and citing cases holding that the Government may claim indemnification under the Veterans Administration Loan Guaranty Program and the Federal Housing Administration Mortgage Guaranty Program.)

12. Bellard complains that recognition of an independent right of recovery in the Government accruing upon its payment of the lender's claim would unfairly protract the period of his susceptibility to legal action. His argument misses the mark. Our decision does not extend the Government's rights, but rather refuses to limit them to less than that available by law to similarly situated private parties.