**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Elizabeth A. TILLERAAS,
Defendant-Appellant.**

**No. 82–3077.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 14, 1983.
Decided June 17, 1983.

John E. Duda (argued), Duda, Elk & Wohl, Cleveland, Ohio, for defendant-appellant.

Solomon Oliver, Marcia W. Johnson (argued), Asst. U.S. Attys., Cleveland, Ohio, for plaintiff-appellee.

Before JONES and WELLFORD, Circuit Judges, and MILES,* District Judge.

* Honorable Wendell A. Miles, Chief Judge, United States District Court for the Western District of Michigan, sitting by designation.

WELLFORD, Circuit Judge.

Defendant-appellant, Elizabeth Tilleraas, applied for and received three student loans totalling $3,500.00 under the Federal Insured Student Loan Program (FISLP) of the Higher Education Act of 1965, 20 U.S.C. § 1071, *et seq.* These loans were secured by three promissory notes executed, respectively, on September 4, 1969, June 18, 1970, and October 5, 1970, in favor of Dakota National Bank & Trust Co., Fargo, North Dakota. Under terms of these student loans, periodic payments were required commencing twelve months after Tilleraas ceased to carry at least one-half of a full-time academic workload at an eligible institution. 20 U.S.C. § 1077(a)(2)(B). Her student status terminated on January 28, 1971, and the first installment payment thus became due January 28, 1972. Appellant never made any payment on any of her loans. The United States insured to the lender bank the repayment in event of any failure to pay by the borrower under the terms of the FISLP.

Under 20 U.S.C. § 1080(e)(2)(B), it is provided:

the term "default" includes only such defaults as have existed for . . .

(B) one hundred eighty days in the case of a loan which is repayable in less frequent [than monthly] installments.

The first payment due on the loans was in "default" within the meaning of the law on or about July 27, 1972, one hundred and eighty days after the failure to make the first installment payment had continued to exist. It was not until December 17, 1973, that the Dakota National Bank sent notice of its election under the provisions of the loan to accelerate the maturity of the note.

The Bank demanded payment in full of the full principal due by December 27, 1973. It then filed FISLP insurance claims against the United States on May 6, 1974, and assigned the three Tilleraas notes to the United States on May 10, 1974. The government, in turn, paid the Bank's claim in full on July 5, 1974. It was not until June 4, 1980, that the appellee government filed suit in Cleveland, Ohio, against the original borrower-recipient of this largess intended to assist students in obtaining a higher education.[1]

The government's suit was met in the trial court by defendant-appellant's motion for a summary judgment based on her contention that the action of the United States was barred by the six year statute of limitations set forth in 28 U.S.C. § 2415(a).[2] The complaint in the cause alleged that the government paid the Bank's insurance claim and was assigned title to the notes after default on the loan and payment by the government pursuant to 45 C.F.R. § 177.48.

■ It is clear that we must apply federal law, not state law, in determining the validity of appellee's statute of limitation defense. *United States v. Scholnick,* 606 F.2d 160, 164 (6th Cir.1979). This rule of law applies because of the federal interest in the protection of its funds. It is crucial, then, to determine under that federal law when the government's cause of action "accrued". Appellant asserts that it accrued when she first defaulted, July 27, 1972. The government responds that the limitation period under 28 U.S.C. § 2416(c)[3] was tolled because of appellant's failure to notify the creditor Bank (or the United States) of her change of address, preventing by this

---

**1.** The terms of these loans were exceedingly generous. The student had up to ten years to repay the loan at favorable interest rates, including a 12 month "grace period" after ceasing to carry one-half of a fulltime workload. *See* 45 C.F.R. § 177.567.

**2.** This section establishes a six-year limitation for every action for money damages brought by the United States upon "any contract express or implied." The parties agree that this is the controlling statute, if applicable.

**3.** For purposes of computing the limitations periods established in section 2415, there shall be excluded all periods during which—

* * * * * *

(C) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances[.]

omission the commencement of suit against her. The government further contends that its cause of action accrued when it paid the insurance claim filed by the lender Bank.

The government admits that under 20 U.S.C. § 1080(b), which provides that upon payment of the lender's claims the government becomes subrogated to all of the lender's rights and is entitled to assignment of the note, and that its rights as assignee are co-extensive with those of the lender. *See Guaranty Trust Co. v. U.S.,* 304 U.S. 126, 141, 58 S.Ct. 785, 793, 82 L.Ed. 1224 (1937). The government argues, however, that it is not limited to assignee status, since it may also rely on its common law right as a surety to bring an action against the principal for reimbursement. Since a surety's or guarantor's cause of action for indemnity does not accrue until payment of the principal's liability, *see Commercial Insurance Co. v. Pacific Peru Construction Corp.,* 558 F.2d 948 (9th Cir.1977); *Hercules, Inc. v. Stevens Shipping Co.,* 629 F.2d 418 (5th Cir.1980), the government claims that it *also* has a cause of action which accrued on the date it paid the lender, July 6, 1974, a cause which was timely when this action was filed.

It is uncontroverted that Tilleraas did not inform the lender Bank, nor the United States, of her change of address from North Dakota to Cleveland upon her marriage and move to Ohio. The government claims that it was not until 1979 that it finally obtained a current address on appellant prior to institution of suit in 1980. Thus, the government would exclude this approximate five year period from the running of the six year statute here involved.

We agree with the district court, 538 F.Supp. 1, that it is unnecessary to decide this contention of the United States, because we affirm the judgment of District Judge William K. Thomas that the government's right of action did not accrue, for purposes of this statute, until July of 1974. ▮ The use of the word "insurance" in the statute is not determinative in light of the realities existing between the relevant parties. The nature of the substantive rights and duties among the parties clearly reflects a surety-principal-lender relationship. Insurance is a contract where one undertakes to indemnify another against loss, damage or liability caused by an unknown or contingent event. Since the insured pays the insurer for the promise of indemnity, the insurer benefits to the extent that a contingency never occurs. Where a contingency does occur, the insurer can still be made whole, by virtue of subrogation, to the extent that the insured would be able to recover damages from a third party. Despite the presence of this right of subrogation it is clear that *when the contract is formed* all legal rights and obligations flow between the insurer and the insured. At this initial stage, there is no legal obligation owing from the third party to the insurer. In fact, it is unknown at that stage whether such a third party obligation will ever arise and, if so, who that third party will be.

▮ A surety, on the other hand, promises to assume the responsibility for the payment of a debt incurred by another should he or she fail to repay the creditor. The arrangement is made to induce the creditor to deal with the borrower where there might otherwise be a reluctance to do so. Under this arrangement, the nature, size, and source of the possible loss to the creditor is known from the start. In addition, there is no payment from the creditor to the surety or guarantor for this "insured" payment. Rather, a kind of tripartite relationship is formed. The consideration running from the creditor to the debtor is deemed sufficient to support the surety's promise to make the debt good. In turn, the benefit flowing to the debtor by virtue of the surety's promise places that debtor under an implied legal obligation to make good any loss incurred by any payment the surety must ultimately make to the creditor. 74 Am.Jur.2d *Suretyship* § 171 (1974). It is clear then that the two contracts are materially distinguishable, as are the rights and duties of the parties involved. *See Madison County Farmers Association v. American Employers Insurance Co.,* 209

F.2d 581 (8th Cir.1954). *See also United States v. Bellard,* 674 F.2d 330 (5th Cir. 1982).

Under the FISLP the student contracts to borrow money with no collateral and upon favorable interest and repayment terms. The lender, in turn, contracts with the Department of Education to insure repayment should the student default. This has consistently been interpreted as creating a third-party surety contract, despite its nomenclature. *See U.S. v. Bellard, supra; U.S. v. Frisk,* 675 F.2d 1079 (9th Cir.1982); *U.S. v. Stevenson,* No. CV80–100 (E.D. Wash.1980); *Grove City College v. Harris,* 500 F.Supp. 253, 260, 268 (W.D.Pa.1980); *U.S. v. Lujan,* 520 F.Supp. 282 (D.N.M. 1980). The only possible "contingency" from which the government protects the lending institution is the possibility that the named student (in this case Tilleraas) may ultimately default on all or part of the designated loan amount. The interdependencies between the three parties, in this case the Dakota National Bank & Trust Co., Tilleraas, and the United States government, "are a situational adaptation of long-recognized principles of guaranty." *United States v. Bellard,* 674 F.2d at 334. At common law the nature of the relationship would have undoubtedly given rise to an implied obligation on the part of Tilleraas to make good the loss incurred by the government when forced to satisfy her debt, a loss arising when the monies were paid to the Dakota National Bank & Trust Co.

The courts which have found a surety relationship in the student loan program have, either explicitly or impliedly, determined that § 1080(b) did not prevent the government from enforcing its rights at common law. Changes in or abrogation of the common law must be clearly expressed by the legislature. *United States v. Bellard, supra. See also Edmonds v. Campagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979); *Isbrandtsen Co. v. Johnson,* 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952). Even where such an intention is explicit, the scope of the common law will be altered no further than is necessary to give effect to the language of the statute. *United States v. Mead,* 426 F.2d 118, 123 (9th Cir.1970); *United States v. Borin,* 209 F.2d 145 (5th Cir.1954), *cert. denied,* 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (1955). Where the issue raised is whether or not a given statutory provision is intended to abrogate the common law rights of the government, the presumption against such a reading of the statute is even stronger. The conclusion that the sovereign is to be denied rights which the realities of the relationship would otherwise allow it to exercise is only justified where the language of, and clear implications from, the statute itself command such a construction. *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 29 S.Ct. 458, 53 L.Ed. 742 (1909); *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

Section 1080(b) does not explicitly address the availability of indemnification as a remedy. The fact that it grants an alternative remedy cannot be read to deny the availability of the common law remedy, particularly where the two possible remedies are not mutually exclusive. Section 1082(a)(6) specifically reserves to the government the right to "enforce, pay, compromise, waive, or release any right, title, claim, lien, or demand *however* acquired, including any equity or any right of redemption." Given such broad language, § 1080(b) cannot fairly be read to alter the common law, and to deny the United States its suretyship rights.

We conclude, therefore, that the United States in this instance stands in the position of a surety-guarantor, and therefore it may pursue its rights as a surety under FISLP. As pointed out, it was not until July of 1974 that the government paid the Bank's claim and obtained its right to sue the defaulting appellant on the underlying loan. Under the realities of the FISLP, the government is a surety of the borrower and is entitled to its rights as such. This is the position supported by the other Courts of Appeals that have considered the same

issue under this law. *United States v. Bellard, supra; United States v. Frisk, supra.*

The principal case relied upon by appellant, *United States v. Dold,* 462 F.Supp. 801 (D.S.D.1978), did not even consider the surety theory, basing its decision on the right of subrogation. It is thus distinguishable, and the other authorities relied upon by appellant have been at least implicitly reversed by the Court of Appeals decisions cited. For further supporting authorities that the United States may pursue its claim against a student loan borrower in default within six years after paying the claim to the lending institution, in addition to those already cited, *see United States v. Lujan, supra,* and *United States v. Wilson,* 478 F.Supp. 488 (M.D.Pa.1979).

Accordingly, we affirm the thoughtful decision of the district court, concluding that the United States, as surety-guarantor, has six years after paying a claim under FISLP in which to institute suit against a defaulting borrower.