Irma L. SCHAERRER, Petitioner,

v.

WESTMAN COMMISSION COMPANY, Respondent.

No. 87SC315.

Supreme Court of Colorado, En Banc.

Feb. 27, 1989.

Bernard A. Poskus, Legal Aid Society of Metropolitan Denver, Denver, for petitioner.

Joan M. Norman, Lirtzman, Nehls & Meyrich, Boulder, for respondent.

MULLARKEY, Justice.

We granted certiorari to determine whether a creditor may garnish the proceeds of a student's federally guaranteed student loan (GSL) in order to collect an antecedent business debt owed by the student. We reverse the court of appeals and hold that the use of state garnishment procedures to attach GSL funds for such purpose is clearly inconsistent with the federal

law governing the GSL program and thus the garnishment cannot be permitted.

## I.

In August 1985, Irma L. Schaerrer applied for and obtained a $2,500 GSL for the express purpose of pursuing a college education at Red Rocks Community College. She deposited the funds in her checking account along with her monthly Social Security disability benefits check. On September 18, 1985, respondent Westman Commission Company (Westman), a restaurant supply company, served a writ of garnishment on Schaerrer's bank account and garnished all of the funds, which totalled $2,073.92. Westman had obtained the garnishment order to collect a judgment against Schaerrer and her ex-husband for a debt they had incurred two years earlier while operating a restaurant. None of the debt was incurred for educational purposes.

Schaerrer filed a *pro se* claim of exemption to the garnishment, asserting that the entire amount in her checking account was exempt from garnishment. She claimed that $572 of her account was exempt as Social Security benefits under 42 U.S.C. § 407 (1983), and that the remainder in her account consisted of GSL funds exempt from garnishment under Title IV of the Higher Education Act of 1965, 20 U.S.C. §§ 1071–1097 (1978 & Supp.1988). The trial court agreed that the Social Security funds were exempt, but refused to prevent the garnishment of the GSL funds.

Schaerrer, with the assistance of a Legal Aid attorney, appealed to the court of appeals. The court of appeals affirmed the judgment of the district court, relying upon the fact that the relevant federal and state statutes had no express exemption from garnishment for GSL funds. The court of appeals reasoned that the language in the federal statutes requiring the funds to be used solely for educational purposes pertains only to student borrowers, and not to their business creditors. *Westman Com'n Co. v. Schaerrer,* 748 P.2d 1316 (Colo.App. 1987).

Before this court, Schaerrer contends that GSL funds may not be garnished for non-educational purposes by a student's prior business creditor because such garnishment conflicts with the federal statutory scheme which created the GSL program. Westman responds that if Congress had intended to exempt GSL funds from garnishment by third party creditors, it could have created such exemption simply and explicitly, as it did for Social Security benefits under 42 U.S.C. § 407 (1983). In the absence of an express exemption, Westman argues that the state garnishment law applies and permits garnishment of GSL proceeds to collect a business debt. To resolve this case, we first must establish the proper framework for our analysis.

## II.

### A.

■ Whether the proceeds of a federally established program may be garnished pursuant to state garnishment procedures is a question of federal law. *Mackey v. Lanier Collections Agency & Serv., Inc.,* —— U.S. ——, 108 S.Ct. 2182, 2186, 100 L.Ed.2d 836 (1988). This question implicates the Supremacy Clause of the United States Constitution because, if federal law prohibits garnishment, a state law permitting garnishment is in conflict with the federal law and cannot stand. *Bennett v. Arkansas,* —— U.S. ——, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988) (per curiam). *See also Philpott v. Essex County Welfare Bd.,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (question of whether state agency can garnish welfare recipient's Social Security benefits is controlled by federal law).

■ Since this is a matter of federal law, our consideration of the case now before us must follow the analytical approach taken by the United States Supreme Court in resolving a similar garnishment question in its recent *Mackey* decision. As a review of that case will show, the Supreme Court's holding and analysis require us to undertake a careful consideration of the language, legislative history and purposes of the Guaranteed Student Loan Program

(GSL Program) before we can conclude whether garnishment of GSL funds is permitted under federal law. Under *Mackey*, the fact that Congress did not create an express exemption from state garnishment for the proceeds of guaranteed student loans is not conclusive.

## B.

In *Mackey*, a collection agency sought to garnish an employee welfare benefit plan, as defined in 29 U.S.C. § 1002(1) (1985) of the Employee Retirement Income Security Act of 1974 (ERISA), in order to collect money judgments against twenty-three plan participants. Even though ERISA by its terms pre-empts any state law to the extent that it "relate[s] to" ERISA benefit plans, 29 U.S.C. § 1144(a), the Court did not conclude its analysis of the garnishment question there. The Court went on to consider the language of ERISA and its legislative history and purpose before concluding that ERISA *pension* plans are exempt from garnishment but "that Congress did not intend to preclude state-law attachment of ERISA *welfare* plan benefits." 108 S.Ct. at 2189 (emphasis added).

In deciding what it described as a close question, the Court compared and contrasted ERISA's treatment of employee welfare benefit plans with its treatment of pension benefit plans. With respect to pension benefit plans, the Court's examination of the garnishment question emphasized section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), which states that "benefits provided under the plan may not be assigned or alienated." Although no express language prohibits the use of state garnishment procedures, the Court found that pension plan benefits could *not* be garnished, stating:

> Section 206(d)(1) bars the assignment or alienation of pension plan *benefits*, and thus prohibits the use of state enforcement mechanisms only in so far as they prevent those benefits from being paid to plan participants.

108 S.Ct. at 2188–89 (emphasis in original). The Court's conclusion that ERISA pension plan benefits are not subject to garnishment is consistent with the majority rule of lower federal and state courts which have considered the same question. 7 *Debtor–Creditor Law* § 29.03[B] at 29–31 (T. Eisenberg ed.1988). *See, e.g., General Motors Corp. v. Buha*, 623 F.2d 455 (6th Cir. 1980).

With respect to employee *welfare* benefit plans, however, the Court in *Mackey* observed that ERISA has no anti-alienation language similar to that applying to pension plans. Based on the statutory language permitting employee welfare benefit plans to sue and be sued, as well as the history and purposes of welfare benefit plans, the Court held that the collection agency could garnish the employee welfare benefit plan.

Four members of the Court dissented in *Mackey*. Employing the same type of analysis as the majority, the dissent argued that allowing garnishment was inconsistent with congressional intent and would subject welfare benefit plans to significant administrative burdens and costs. 108 S.Ct. at 2192–93 (Kennedy, J., dissenting). For those reasons, the dissent would have found that welfare benefit plans, like pension plans, are not subject to garnishment. Neither the majority nor the dissent found the absence of an express exemption from garnishment to be conclusive. Rather, the analysis undertaken by both was consistent with the Supreme Court's frequently repeated admonishment that, in construing a federal statute, a court must " 'look to the provisions of the whole law, and to its object and policy' " with the objective of "ascertain[ing] the congressional intent and giv[ing] effect to the legislative will." *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975) (quoting, in part, *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 116, 125, 12 L.Ed. 1009 (1849)).

Thus, contrary to Westman's argument, the absence of an express federal exemption from garnishment for GSL proceeds is not controlling. In this case of apparent first impression, the language, history and purposes of the GSL Program must be examined to determine if GSL proceeds may be garnished.

### III.

Congress created the GSL Program, 20 U.S.C. §§ 1071–1097 (1978 & Supp.1988), as part of the Higher Education Act of 1965 (the Act). Although the Act does not have a provision pre-empting state laws like the one found in ERISA, *Mackey* indicates that the existence of a pre-emption provision is a relevant, but not dispositive, factor to be considered in determining congressional intent. In the face of ERISA's express pre-emption of state laws, the Supreme Court in *Mackey* found that one ERISA fund was garnishable under the general garnishment laws of Georgia and that another ERISA fund was not garnishable. Pursuant to *Bennett*, 108 S.Ct. 1204, the question presented by the garnishment issue is whether there is a conflict between the state law and the federal law. A "clear inconsistency" between the two laws "amounts to a 'conflict' under the Supremacy Clause—a conflict that the State cannot win." *Id.* at 1205. Thus, we must determine whether garnishment of GSL proceeds to collect a business debt is clearly inconsistent with the GSL Program.

Since its inception almost twenty-five years ago, the GSL Program has been dedicated to making funds available to qualified individuals to pursue education or job training beyond high school.[1] H.R.Rep. No. 520, 96th Cong., 2d Sess. 5, *reprinted in* 1980 U.S.Code Cong. & Admin.News 3141, 3145. The law has been amended periodically since its enactment, but the purpose of the GSL Program has remained the same: to provide Americans with increased opportunities to pursue postsecondary education as a means of enhancing each participant's employability and economic contribution to the nation. 1980 U.S. Code Cong. & Admin.News at 3182. In the past decade, the Act has been specially tailored to serve better the needs of "nontraditional and adult students" such as "the worker changing careers, the displaced homemaker, the veteran and the adult seeking educational enrichment and career advancement" who are "becoming the new majority in all of postsecondary education." *Id.* at 3145.

Under the GSL Program, a student who meets the strict eligibility criteria may borrow money from a bank or other lender to attend certain qualified institutions of higher education or vocational schools. 20 U.S.C. §§ 1077, 1084; S.Rep. No. 882, 94th Cong., 2d Sess. 18, *reprinted in* 1976 U.S. Code Cong. & Admin.News 4713, 4730. A loan under the GSL Program can be made only to a student who demonstrates financial need which is defined as "the cost of attendance of such student minus the expected family contribution for such student." 20 U.S.C. § 1087kk. "Cost of attendance" is defined in 20 U.S.C. § 1087*ll* as including items such as tuition, books, supplies, and transportation. The loan proceeds are sent directly by the lender to the school and the school is not authorized to release the funds until it has verified the student's enrollment and obtained a written statement from the student that the funds will be used only for educational purposes. 34 C.F.R. §§ 682.201, 682.604(c) (1987).

The federal government through the Secretary of Education makes all interest payments on the loan while the student is enrolled in school and during the six month grace period after the student leaves school, as well as during any periods in which the student defers payments on the loan. 20 U.S.C. § 1078; 34 C.F.R. § 682.300. The federal government then continues to pay up to 4% per year in interest subsidies during the loan repayment period, which may last for up to ten years. 20 U.S.C. § 1078; 34 C.F.R. § 674.32(c). The government is the guarantor or surety for the loan. 20 U.S.C. § 1082; *United States v. Frisk*, 675 F.2d 1079, 1082 (9th Cir.1982); *United States v. Bellard*, 674 F.2d 330, 336 (5th Cir.1982). If the student defaults, the government must reimburse the lender and may seek to collect from the student either as guarantor or as the assignee of the lender. 20 U.S.C. § 1080; *Bellard*, 674 F.2d 330.

---

1. In a similar fashion, the Colorado student loan program which helps administer the federal GSL program was established for the express purpose of improving state residents' access to higher education opportunities. § 23–3.1–101, 9 C.R.S. (1988).

Participants in the GSL program are made well aware that GSL funds may be used only for educational purposes and that, under the Act's enforcement provisions, the misapplication of GSL loan proceeds subjects a violator to potential criminal penalties. 20 U.S.C. § 1097(a) provides: "Any person who knowingly . . . misapplies . . . any funds . . . under this subchapter . . . shall be fined not more than $10,000 or imprisoned for not more than five years, or both." The statutory scheme also sets up penalties for lenders who fail to comply with the statute's requirement that the funds be used for educational purposes. 20 U.S.C. § 1097(c). Congress passed the penalty and enforcement provisions of the Act partly in response to findings from oversight hearings on the administration of the GSL Program. The oversight committee specifically identified the "siphoning off of grant funds for purposes not directly related to education" including "payments to non-students for non-educational services" as an abuse of the program which the penalty provisions were designed to prohibit. S.Rep. No. 882, 94th Cong., 2d Sess. 23, *reprinted in* 1976 U.S.Code Cong. & Admin.News 4713, 4735. Thus, in the strongest possible terms, Congress has made it clear that guaranteed student loans are to be used only for educational purposes.

The Higher Education Act deals with the interplay of state garnishment laws and the GSL Program in two provisions. In the case when a student borrower defaults on the repayment of a GSL, 20 U.S.C. § 1078–5 provides that state garnishment procedures may be used to collect the debt only if the state law meets, or is supplemented by, certain notice and other procedural requirements specified in that section. For example, one added requirement is that an administrative hearing must be provided to permit the student borrower to challenge the existence and amount of the debt. 20 U.S.C. § 1078–5(a)(5).

The second reference to state garnishment laws is found in 20 U.S.C. § 1082(a)(2) which provides that the Secretary of Education may sue or be sued in connection with the GSL Program. That same subsection prohibits garnishment by stating that "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property within the Secretary's control." This language stands in sharp contrast to the unrestricted "sue or be sued" language related to ERISA welfare benefit plans which the Supreme Court interpreted in *Mackey* as permitting, by inference, the use of state garnishment procedures.

The petitioner Schaerrer comes squarely within the group targeted for assistance by the GSL Program as an adult, non-traditional student who is seeking additional education to enable her to change careers and to improve her economic status. The detailed statutory eligibility criteria make it clear that she could not have obtained a GSL in order to pay the outstanding debts from her failed restaurant business. Indeed, like all recipients of loans under the Program, Schaerrer was required to sign a written statement of educational purpose certifying that the loan proceeds "will be used solely for expenses related to attendance" at the school she was attending. *See* 20 U.S.C. § 1091(a)(4); 34 C.F.R. § 682.203.

The stringent limitations which Congress has placed on the use of GSL funds, reinforced by the threat of criminal penalties for misuse, are equivalent to the anti-alienation language which prevented garnishment of ERISA pension funds in *Mackey*. Certainly it defeats the entire purpose of the student loan program to permit a creditor to attach loan proceeds to pay a prior business debt. By allowing garnishment for such purposes, money is misused or siphoned off, in direct contravention of congressional intent. Students such as Schaerrer, who need loans to attend school, will be unable to pursue their education, unable to change careers, and ultimately much less able to pay their debts and to be financially contributing members of society. Under the terms of the Act as discussed above, the federal government must pay the interest on Schaerrer's loan while she is in school and an annual interest subsidy on the loan for up to ten years. If she defaults, the government must reimburse the lender for the balance of the loan

and incur costs in attempting to collect from her. Surely Congress did not intend that tax dollars, which were specifically appropriated for education, should be used to pay ordinary commercial debts.

Our examination of the federal statutory scheme reveals that Congress, by carefully circumscribing the use of garnishment to collect on defaulted student loans and prohibiting garnishment of funds in the Secretary's control, did not intend to allow free and unrestricted use of state garnishment procedures to attach the proceeds of a GSL. The Act exhibits a distrust of state garnishment laws and allows their use only in limited circumstances with very explicit additional procedural protections for the debtor. We are persuaded that Congress' failure to expressly prohibit the garnishment of loan proceeds was not intended to signal its approval of garnishment but was, at most, an inadvertent omission from the Act. In short, we do not read Congress' silence in this regard as consent.

For these reasons, we conclude that the application of state garnishment law to GSL funds in this case is clearly inconsistent with the GSL Program. The state law must yield to the federal law. Accordingly, the judgment of the court of appeals is reversed and the case is remanded to that court with directions to remand the case to the district court for further proceedings consistent with this opinion.

VOLLACK, J., dissents, and ROVIRA, J., joins in the dissent.

VOLLACK, Justice, dissenting:

I respectfully dissent because I do not believe that Congress intended to create an implied exemption from garnishment for GSL funds when it could have done so through the simple expedient of an express exemption.[1]

I agree with the majority that this is a matter of federal law. Because a plain reading of the Higher Education Act of 1965, §§ 1071–97 (1978 & 1988 Supp.) (Act) does not decide whether a creditor may garnish GSL funds under Colorado law, a review of the Act's legislative history is necessary to determine the intention of Congress.

It is significant that § 1082(a)(2) of the Act expressly exempts the Secretary of Education as well as property under his or her control from "attachment, injunction, garnishment, or other similar process," while no section of the Act expressly exempts GSL funds from garnishment. Express exemption from state law is a common device used by Congress to preempt state law. Congress has for example created an express exemption for social security disability payments by providing that "none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 U.S.C. § 407 (1983). The Colorado General Assembly likewise has created express exemptions for money, personal property, and benefits of judgment debtors. See § 10–14–122, 4A C.R.S. (1987) ("No money or other benefit ... to be paid, provided, or rendered by any [fraternal benefit] society shall be liable to attachment, garnishment, or other process...."); § 8–52–107(1), 3B C.R.S. (1986) (worker's compensation benefits "shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy or recovery or collection of a debt, which exemption may not be waived");

---

1. I believe the majority misinterprets the oversight committee's observation that amendment to the Higher Education Act was necessary to prevent the "siphoning off" of GSL funds for such non-educational purposes as "payments to non-students for non-educational services." Maj. op. at 1062. While not entirely clear, the oversight committee's comments appear to be directed at preventing the student from *voluntarily* paying non-students for non-educational purposes rather than preventing non-students from enforcing legal judgments to obtain *invol-*

*untary* payments from the student. See S.Rep. No. 882, 94th Cong., 2d Sess. 23, *reprinted in* 1976 Code Cong. & Admin.News 4713, 4735. My view of the oversight committee's comments is reinforced by the language of 20 U.S.C. § 1097(a), which provides criminal penalties for any person who "knowingly and willfully embezzles, misapplies, steals, or obtains" GSL funds "by fraud, false statement or forgery," but provides no criminal penalty for creditors who use the courts to enforce a legal judgment against the student's GSL funds.

§ 8–80–103, 3B C.R.S. (1986) (unemployment compensation benefits "shall be exempt from levy, execution, attachment, or any other remedy as provided for the collection of debt" except as provided in the Colorado Child Support Enforcement Procedures Act); § 13–54–102(1), 6A C.R.S. (1987) (under Uniform Enforcement of Foreign Judgments Act, certain listed personal property "is exempt from levy and sale under writ of attachment or writ of execution"); § 24–51–212, 10B C.R.S. (1988) (with limited exceptions, "none of the moneys, trust funds, reserves, accounts, or benefits [accrued to the Public Employees' Retirement Association] shall be assignable ... or be subject to execution, levy, attachment, garnishment, bankruptcy proceedings, or other legal process"); § 26–2–131, 11 C.R.S. (1982) ("[N]one of the money paid or payable [as public assistance benefits] shall be subject to execution, levy, attachment, garnishment, or other legal process or to the operation of any bankruptcy or insolvency law."). In this case, the district court properly held that $572 in Schaerrer's bank account was exempt from garnishment by Westman because of the express exemption for social security disability funds under 42 U.S.C. § 407.

That the Act expressly exempted property under the Secretary of Education's control from garnishment by third parties but made no such provision for GSL funds leads me to conclude that Congress did not intend to create such an exemption for GSL funds in the first place. The Colorado General Assembly also failed to create an express exemption from garnishment for GSL funds under the Colorado Student Loan Program. I would affirm the judgment of the court of appeals and refuse to recognize an implied exemption from garnishment for GSL funds against claims of third party creditors, preferring to leave that function to the legislative branch of government.

I am authorized to say that Justice ROVIRA joins in this dissent.