UNITED STATES of America, Plaintiff,

v.

Jose OLAVARRIETA, Defendant/Third Party Plaintiff,

v.

The BOARD OF REGENTS OF the DIVISION OF UNIVERSITIES OF the FLORIDA DEPARTMENT OF EDUCATION and/or the University of Florida, Third Party Defendant.

No. 85–0438–Civ–Spellman.

United States District Court, S.D. Florida.

Jan. 14, 1986.

Order of Dismissal as to the Board of Regents Jan. 14, 1986.

Order Granting Plaintiffs Motion for Summary Judgment April 9, 1986.

B.B. Allen, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Jose Olavarrieta, pro se.

Arthur Wallberg, Asst. Atty. Gen., Tallahassee, Fla., for third party defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL AS TO THE UNIVERSITY OF FLORIDA

SPELLMAN, District Judge.

THIS CAUSE is before the Court on Third Party Defendant University of Florida's Motion to Dismiss, filed on May 14, 1985. The Court will also address the memoranda submitted by the Plaintiff and Defendant/Third Party Plaintiff. The

Court having reviewed the record and for the reasons set forth below, it is hereby

ORDERED AND ADJUDGED that the Motion to Dismiss is GRANTED.

■ This action was commenced by the United States on February 15, 1985 to recover the unpaid balance and interest on student loans made to Olavarrieta by a local bank under the mechanism set forth in the Federal Insured Student Loan Program, Tit. IV–B of the Higher Education Act of 1965, 20 U.S.C. §§ 1071–1088 (1980). Olavarrieta does not dispute the Government's allegations that he executed three promissory notes to Inter-National Bank of Miami, now known as Royal Trust Bank of Miami, for a total of $4,000.00. These notes were made January 28, 1974, July 29, 1974 and January 10, 1975, in the amounts of $1,100.00, $900.00 and $2,000.00 respectively. Each of the notes bore simple interest at the rate of 7% per annum on the outstanding balance, and each provided for repayment of principal, together with interest thereon, to begin nine months after the date on which the maker ceased to carry at least one-half the normal full-time academic workload at an eligible institution. Olavarrieta ceased to carry at least one-half the full-time workload in June, 1975. The Defendant did make a sole payment of $79.21, although when that payment was made is not clear from the record. Demands for payment were made by the bank, but to no avail. The United States then took over the task of sending demand letters, which also proved fruitless. Finally, Royal Trust Bank sought payment from the Government for the loans now in default, and was paid $4,165.45 on March 3, 1979. The Government, barely less than six years later, sought reimbursement from Olavarrieta by filing this suit.[1]

---

1. The Court had directed the parties to the original action to file memoranda of law discussing, among other topics, any relevant statutes of limitations. The Court finds that since the government paid in full its obligation as guarantor to the bank on March 3, 1979, and this suit was filed on February 15, 1985, the action was timely filed. The provisions of 28 U.S.C. § 2415(a) state in pertinent part: "Subject to the provisions of Section 2416 of this title, and

except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof, which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues." Case law is clear that a guarantor's right to reimbursement accrues once it has paid the creditor in full for the principal's dept. *United States v. Frisk,* 675 F.2d 1079, 1082

Olavarrieta has taken the position that he is not obligated to pay back the Government because, he claims: the loans were illegal, the action is time barred by the statute of limitations under Florida law, there was no consideration, and that because the Defendant did not receive a Juris Doctor degree, but only a "Certificate" signifying completion of his studies in the program for which he borrowed the funds, that the funding itself was for an illegal purpose. The Defendant has filed a Third Party Complaint (and Amended Complaint) against the "Board of Regents of the Division of Universities of the Florida Department of Education, a.k.a. the Board of Regents, and/or the University of Florida." The University of Florida has moved to dismiss the Amended Complaint on the grounds that: the University does not have the capacity to sue or be sued, insufficiency of process, lack of jurisdiction by this Court under the Eleventh Amendment, statute of limitations, and failure to state a cause upon which relief can be granted. The Court need not address all of the aforementioned grounds in detail because it is clear each one would be sufficient reason for this case to be dismissed.[2]

■ Part II of Chapter 240 of the Florida Statutes discusses the State University System. The Board of Regents may sue or be sued. Fla.Stat. § 240.205(4). There is no comparable statute which empowers a University to sue or be sued. *Also see Byron v. University of Florida*, 403 F.Supp. 49 (N.D.Fla.1975) (an individual University lacks the capacity to be sued and must be dismissed). Thus, the University of Florida is not a proper party in this action.

■ Although the University does not have the capacity to be sued in its own name, the Court notes that even if it did, service of process has been ineffective.

The Defendant/Third party Plaintiff served a copy of the Complaint on the resident agent of the University of Florida Central Florida Gator Club, Inc. This organization is made up of Gators (the name of the football team at the university) fans and is not related to the University in any other respect.

■ It appears that the statute of limitations would bar Olavarrieta's action against the University of Florida, should he be able to sue it in the first place. In his Complaint, the Defendant alleges that the University breached a contract it had with him, and that the school violated the intent and requirements of the Higher Education Act of 1965. Because the contract is apparently an oral one, it would fall under the four year limitation pursuant to Fla.Stat. § 95.11(3)(k). Although it is not totally clear, the Complaint intimates that these oral promises were made prior to the Defendant's enrollment in the program. Thus, the action accrued in 1975 at the latest, and is clearly time barred. As for the Defendant's allegations that the University *"violated Federal Rules and Regulations"* (emphasis in the original), the Court simply cannot discern a cause of action. It is possible that the Defendant is alleging that, by virtue of the school's failure to award him a J.D. or academic credits, the University had in effect breached an agreement with the federal government. In fact, Olavarrieta claims that he is a "beneficiary" of the Federal Financial Assistance program. Given tremendously liberal application of the law of contracts, the Defendant is still time barred from bringing this action under Fla.Stat. § 90.11(3)(k).

■ Finally, the Court notes that even if the allegations in the Third Party Complaint were true, and even if the Defendant were not precluded from bringing suit

(9th Cir.1982); *United States v. Tilleraas,* 709 F.2d 1088, 1092 (6th Cir.1983). Thus, the government's cause of action accrued on March 3, 1979, and was timely filed.

**2.** Although the Defendant/Third party Plaintiff was certified as having completed the Cuban

American Lawyers Program at the University of Florida, his memoranda of law and pleadings have left almost every legal issue present in this case virtually untouched. Although read very closely and liberally, Olavarrieta's response to the motion to dismiss was ineffectual.

against the University, the Defendant's claim would fail. The United States' obligations under the Federal Insured Student Loan Program bring it squarely within hornbook definitions of a guarantor. *United States v. Bellard*, 674 F.2d 330, 333 (5th Cir.1982) (footnote omitted). As guarantor, the United States' obligation arise only upon the principal's failure to perform. *United States v. Griffin*, 707 F.2d 1477, 1480 n. 3 (D.C.Cir.1983). It is undisputed that Olavarrieta defaulted on the loan, the bank sought payment from the United States, and the government now seeks reimbursement from the Defendant. The University does not have a role to play in this action. One of the few cases in which a defaulting student raises defenses to the demand for reimbursement is anomalous to the case at hand. In *Griffin, supra,* the student had received the loan directly from a for-profit vocational school, and had raised certain defenses to repayment directly with the school's collection agency. It was later discovered that the school had numerous problems of which the government was aware. The government nonetheless paid the school for the defaulted loan. The Court in *Griffin, supra,* held that the court below had erred in granting summary judgment in favor of the government since Griffin had raised his defenses against the school prior to payment by the government, thus preserving them. Although the facts in *Griffin* differ significantly from those before the Court, the case does make one point clear. The defaulting student's defenses are to be made against the government, not the school, regardless of the school's status as lender. Once the defaulted loan is paid, the government, as guarantor, is the party Olavarrieta must deal with, not the University or the bank. The Third Party Plaintiff fails to cite any authority under which he may have a cause of action against the Third Party Defendant, or under which the Third Party Defendant is or may be liable to him for the amount claimed by the government against him.

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) the Complaint is liberally construed and viewed in the light most favorable to the plaintiff. *Stephenson v. Gaskins*, 539 F.2d 1066 (5th Cir. 1976). Where the plaintiff appears *pro se,* allegations in the Complaint are held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). These well settled tenets do not, however, preclude dismissal of a Complaint that cannot withstand any legal scrutiny. This is, in effect, what is before the Court. The Third Party Complaint fails to withstand the motion to dismiss, and therefore must be dismissed.[3]

## ORDER OF DISMISSAL AS TO THE BOARD OF REGENTS

THIS CAUSE is before the Court on the Motion to Dismiss filed by the Third Party Defendant, the BOARD OF REGENTS ("Board") and the Defendant/Third Party Plaintiff's, JOSE OLAVARRIETA ("Olavarrieta") response thereto. For judicial economy's sake, the Court hereby incorporates the factual background provided in this order's companion order dismissing the University of Florida from the suit.

Initially, the Board's assertion that the Third Party Complaint must be dismissed because the Eleventh Amendment divests the Court of jurisdiction is without merit. There is no question that under Fla.Stat. § 240.205 (1979), the Board has the "capacity to sue or be sued." Additionally, it appears that the case law cited is somewhat inapplicable in that it is the Board and not an individual university which is invoking the protection of the Eleventh Amendment in the case at bar.

---

**3.** Defendant/Third Party Plaintiff's Motion to Strike and/or Motion for Judgment on the Pleadings is DENIED. The motion is without a shred of merit. This case shall proceed without delay.

Despite the inapplicability of the Eleventh Amendment as to this Third Party Defendant, the Board is correct that the action is barred by any of the statutes of limitations conceivably pertinent. The Board cites 28 U.S.C. § 2415 (six year limitation on actions brought by the United States); Fla.Stat. § 95.11(2)(b) (five year limitation on a written contract action); and Fla.Stat. § 95.11(3)(k) (four year limitation an action brought on an oral contract). As stated in the companion order, Olavarrieta states that statements were made to him by the Third Party Defendants prior to his enrollment. Thus, the action accrued in 1975 at the latest, and is therefore barred by any of the statutes of limitations listed above. Olavarrieta's response that the Board cannot invoke the time bars applicable "because the Third Party Defendant is in violation of F.S. 95.051(c) by not been [sic] registered as the person to be sued" is inaccurate and meritless. Therefore, Olavarrieta could not recover from the Board even if he had made a claim upon which relief could be granted.

This brings the discussion to the point that Olavarrieta has failed to state a claim upon which relief can be granted regardless of the statutes of limitations. In the Amended Third Party Complaint, he simply fails to produce any factual or legal basis whereby he may be entitled to indemnification or any of the other relief requested. His claims against the Third Party Defendants cannot insulate him from the realities of this case, no matter how strenuously he makes them. Olavarrieta's claim that the Third Party Defendants have acted contemptuously is wholly absurd.[1]

Based on the above analysis of the Board's Motion to Dismiss and the response thereto, the Court can reach only one conclusion. In considering the Amended Third Party Complaint most liberally and in the light most favorable to the Plaintiff as *Stephenson v. Gaskins,* 539 F.2d 1066 (5th Cir.1976) directs, the Court, nonetheless must dismiss the Amended Third Party Complaint against the Board. It is therefore

ORDERED AND ADJUDGED that the Third Party Defendant's Motion to Dismiss is GRANTED.[2] In granting said motion, the third party action is now dismissed in its entirety.[3]

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court on the government's Motion for Summary Judgment against Jose L. Olavarrieta. The government seeks to prove that Olavarrieta failed to repay student loans for which the government acted as guarantor.

## FACTUAL BACKGROUND

Several years ago, Olavarrieta sought funds in the form of student loans in order to enroll in the Cuban American Lawyers' Institute ("CALI") program offered at the University of Florida. The Supreme Court of Florida oversaw the creation of a program of course work administered by the University whereby Cuban refugees who had practiced law in Cuba could expedite their legal training in this country before sitting for the Florida bar examination.[1]

---

**1.** It is true that the Board of Regents did not file its Motion to Dismiss until December 5, 1985 although the Motion to Dismiss filed on behalf of the University of Florida was filed May 14, 1985. This disparity, however, was a result of confusion as to the efficacy of service of process on the Board's part rather than its desire to thwart the smooth resolution of this case.

**2.** The United States has recently filed its Motion for Summary Judgment; Olavarrieta's response

thereto has just been filed. The original action is now ready for disposition.

**3.** The additional relief requested by Olavarrieta such as causing an involuntary dissolution of the Board of Regents is summarily denied.

**1.** *See In Re: Proposed Amendment to Article IV, Section 22, Rules of the Supreme Court Relating to the Admission to the Bar,* Case No. 43,040 (Fla. July 31, 1973).

In order to be able to pay the fees and tuition, Olavarrieta applied for a Federally Insured Student Loan on three occasions.[2]

On or about October 18, 1973, Olavarrieta applied for a loan in the amount of $1,100.00 to cover the academic term commencing September, 1973 and continuing through March, 1974. On January 28, 1974, the Defendant executed a promissory note to InterNational Bank of Miami, now known as the Royal Trust Bank of Miami, N.A. ("Royal Trust") for a Federally Insured Student Loan ("FISL") for $1,100.00.

This procedure was repeated on two more occasions. On July 29, 1974, Olavarrieta executed a promissory note to the bank for $900.00. A third note was executed on January 10, 1975 in the amount of $2,000.00. Olavarrieta does not dispute that these notes were made, signed and valid, and that he received and used the funds.

Each of the promissory notes bore simple interest at the rate of 7% per annum on the outstanding balance, and each provided for repayment of principal, together with interest thereon, to begin nine months after the date on which the maker ceased to carry, at an eligible institution, at least one-half the normal full-time academic workload, as determined by that institution.

As of June, 1975, Olavarrieta ceased to carry at least one-half the academic workload, and was therefore obligated to begin making payments on the notes, beginning in March, 1976. At that time, the total unpaid principal amounted to $4,000.00.

At some point prior to the assignment of the notes, the Defendant made a single payment of $79.21.

Once it became clear that Olavarrieta was obligated to begin his repayments, and failed to do so, Royal Trust sent several demand letters to him. Meeting with failure, the bank requested the assistance of the Department of Health, Education and Welfare in obtaining repayment. On June 1, 1977, HEW sent a demand letter to Olavarrieta; the letter was ignored.

In the interim, the statutory functions of the HEW were reassigned to the United States Department of Education. From March 18, 1979 through March 19, 1982, additional demand letters were sent to Olavarrieta from the Department of Education.

The government's attempts to recover payment on the notes also had proven futile. On February 7, 1979, Royal Trust submitted its application for the amounts due in unpaid principal and accrued interest to the Department of Education for payment, pursuant to 20 U.S.C. § 1080. Also on that date, the bank assigned each promissory note to the United States of America.

As of February 7, 1979, the total amount due to the bank was $4,575.36; $3,920.79 in unpaid principal and $654.57 in accrued interest. On March 3, 1979, HEW, through the Department of Education, payed to Royal Trust the full amount claimed by the bank on the notes.

Olavarrieta does not argue with the preceeding narrative on the facts. Instead, he challenges the government's position that it is entitled to summary judgment on the following grounds: that unanswered questions remain; the CALI program was not qualified under the Higher Education Act of 1965, 20 U.S.C. §§ 1071–1088 (1980); that Olavarrieta was deceived by the material contained in the pamphlet entitled "Your Guaranteed Student Loan: Rights and Responsibilities" and a letter dated January 22, 1975 sent to him by the University of Florida; that the Supreme Court of Florida set up the CALI program with the intention of creating a "diminished or handicapped class of attorneys"; and that the government's claim is barred by the statute of limitations in 28 U.S.C. § 2415(a).

## DEFENDANT'S CHALLENGES

First, this discussion of the Defendant's defenses must be prefaced with the point

---

2. The mechanism by which the student loans were made to Olavarrieta is set forth in the Federal Insured Student Loan Program, Tit. IV–B of the Higher Education Act of 1965, 20 U.S.C. §§ 1071–1088 (1980).

that no factual issues remain in this case. Olavarrieta does not challenge the government's motion on a factual dispute, despite his iterated contention that there are "unanswered questions". Whatever questions remain, they are not factual.

Second, the Court finds that the Defendant has offered no proof, nor even a suggestion, that the CALI program cannot be eligible under the Higher Education Act, as amended, for purposes of those enrolled in it receiving student loans. Its purpose was to benefit persons such as Olavarrieta and help them circumvent the very time consuming and arduous training that attorneys in this country must endure. The Defendant admits that he received his certificate from the program upon completion of his work. The program never made any promises that said certificate would entitle him to become a member of the Bar without passing the examination.

Third, the Court cannot glean from a thorough reading of Defendant's exhibits # 2 and # 3 how the material contained in either document could deceive an intelligent adult such as the Defendant. They are both basic documents which provide the reader with a brief outline of the terms of the loan and some technical details for completion of the program. They are, in effect, irrelevant to this action.

Fourth, the Defendant alleges that the Supreme Court of Florida, by providing a class of refugees benefits over and beyond those offered to any other group of exiles, actually intended to create a "diminished or handicapped class of attorneys". The Court will not respond to this allegation.

Fifth and finally, the Defendant states that this action is time barred. The Court finds that since the government paid in full its obligation as guarantor to the bank on March 3, 1979, and this suit was filed on February 15, 1985, the action was timely filed. The provisions of 28 U.S.C. § 2415(a) state in pertinent part:

> Subject to the provisions of Section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof, which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues.

■ Case law is clear that a guarantor's right to reimbursement accrues once it has paid the creditor in full for the principal's debt. *United States v. Frisk*, 675 F.2d 1079, 1082 (9th Cir.1982); *United States v. Tilleraas*, 709 F.2d 1088, 1092 (6th Cir.1983). Upon payment to the bank by the government, the Defendant became liable for the sums paid. *United States v. Bellard*, 674 F.2d 330, 335–56 (5th Cir. 1982); *United States v. Tilleraas*, 538 F.Supp. 1, 6 (N.D.Ohio 1981), *aff'd* 709 F.2d 1088 (6th Cir.1983).

Throughout this case, Olavarrieta has alleged that there was no consideration for the loans and that they should be found to be without legal effect. The Court is a mite incredulous at this proposition of the Defendant's. Aside from the fact that the CALI was created for his benefit as an attorney and officer of the Court, surely the Defendant could not think that he would be advanced funds for his educational edification and not have a legal, if not moral, obligation to repay the lender. As stated in *United States v. Wilson*, 478 F.Supp. 488, 490 (M.D.Pa.1979): "the [student] debtor also benefits from the insurance because the program makes loans which might not otherwise be available or would be available at higher rates of interest." There is no question that the Defendant received significant advantages by being privileged to participate in the FISL and CALI programs.

## CONCLUSION

■ The Court does not recall offhand a case that is more cut and dry. The Defendant took out three student loans under the FISL program and participated in the CALI program at the University of Florida. Olavarrieta received his certificate upon completion of the CALI program.

His course work ended, and he became obligated to begin repaying his loans. He refused to do so. The bank sought repayment; the government sought repayment. He has had the benefit of over $4,000.00 and no detriment other than having to defend a lawsuit lawfully waged against him by the United States which now seeks repayment of the monies due.

There is no genuine issue of material fact remaining in this case. The facts were never in dispute, actually. Olavarrieta merely contested the government's legal rights to recover the money. There being no question that the government is in fact entitled to the funds, summary judgment must be entered in its favor. Accordingly, it is hereby

ORDERED AND ADJUDGED that the government's Motion for Summary Judgment is GRANTED and summary judgment is entered in its favor and against the Defendant, JOSE L. OLAVARRIETA. The government shall submit to the Court a Final Judgment within ten days from the date of this Order.