**UNITED STATES of America, Plaintiff,**

v.

**Charlotte J. McClendon DAVIS, Defendant.**

**Civ. A. No. 91–T–868–N.**

United States District Court, M.D. Alabama, N.D.

June 29, 1992.

James E. Wilson, U.S. Atty., Patricia Conover, Montgomery, Ala., for plaintiff.

Lawrence Gardella, Montgomery, Ala., for defendant.

ORDER

MYRON H. THOMPSON, Chief Judge.

In this lawsuit, plaintiff United States of America seeks to recover a defaulted student loan from defendant Charlotte J. McClendon Davis. Both sides have moved for partial summary judgment on the issue of whether the government's claim is time-barred.[1] For the reasons that follow, the court concludes that, as a result of amendments to the Higher Education Act of 1965,[2] this lawsuit is not time-barred.

1. Davis also contends that, although she executed the student loan agreement, the loan was for her husband. The court is addressing this issue separately in this litigation.

2. This Act is codified at 20 U.S.C.A. §§ 1001–1145g.

## I.

The facts of this case are undisputed. In December 1972, Davis executed a promissory note to secure a student loan from the Beverly Hills National Bank in California. The United States Department of Education guaranteed the loan under programs authorized by the Higher Education Act of 1965. The note became due in 1973 and, since that time, Davis has failed to make any payments toward her debt. In 1978, the Beverly Hills National Bank assigned the loan to the Department of Education. The Department has demanded payment of the loan but without success.

## II.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." As stated, the only question before the court is whether this lawsuit seeking to collect Davis's student loan is barred by an applicable statute of limitations. The parties agree that, because the relevant underlying facts are not in dispute, the critical issue is purely one of law. The government contends that, although this lawsuit would have been once barred, it is no longer.

In 1991, the Higher Education Act of 1965 was amended to eliminate entirely all statutes of limitations for lawsuits brought to collect loans made or insured under the Act. The Higher Education Technical Amendments of 1991 provide, with regard to student loans, that "Notwithstanding any other provision of statute, regulation, or administrative limitation, no limitation shall terminate the period within which suit may be filed, a judgment may be enforced, or an offset, garnishment, or other action initiated or taken." Section 3(a) of Pub.L.

102–26, codified at 20 U.S.C.A. § 1091a(a). The 1991 Amendments further provide that they "shall apply to any actions pending on or after the date of the enactment of the Higher Education Technical Amendments of 1991 that are brought before November 15, 1992." Section 3(c) of Pub.L. 102–26. Before passage of the 1991 Amendments, the Higher Education Amendments of 1985 had established a six-year limitations period from the date of the assignment of the student loan to the Department of Education.[3] The parties do not dispute that, under the 1985 Amendments, the government's claim against Davis would be barred: more than six years have passed since the loan was assigned to the government.[4] The critical question, therefore, is whether the 1991 Amendments, which eliminated all statutes of limitations, have effectively revived the government's claim against Davis.[5]

Recently, the United States Supreme Court instructed

> "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' "

*Connecticut Nat'l Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (citations omitted), quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). Here, the Higher Education Technical Amendments of 1991 are clear and straightforward: they provide that "no limitation shall terminate the period within which suit may be filed," Section 3(a) of Pub.L. 102–26, codified at 20 U.S.C.A. § 1091a(a), and, further, that this proscription on limitations provisions "shall apply to any actions pending on or after the date

**3.** The 1985 Amendments were enacted as Section 16033 of the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. 99–272.

**4.** Alabama law provides for a six-year limitation period from the date of default, 1975 Alabama Code § 6–2–34(9), and the federal statute of limitations applicable to actions brought by the United States on contracts in writing similarly

provides for a six-year limitation period, 28 U.S.C.A. § 2415. When this lawsuit was brought, the periods under these laws had run as well.

**5.** Davis does not challenge the authority of Congress to revive claims previously barred by statutes of limitations.

of the enactment of the Higher Education Technical Amendments of 1991 that are brought before November 15, 1992." Section 3(c) of Pub.L. 102–26. The 1991 Amendments clearly apply to this litigation: this lawsuit was brought before November 15, 1992, and was pending after the date of enactment of the 1991 Amendments. Therefore, under a literal application of the Amendments, no limitations defense, such as the one asserted by Davis, may terminate this lawsuit.

 Davis, nevertheless, attempts to circumvent the application of the Amendments with a number of arguments. First, she contends that the word "shall" in the phrase "no limitation shall terminate" connotes that the Amendments apply prospectively only and do not revive claims already time-barred. However, Davis erroneously seeks to read the word in the future tense. The word "shall" used in the second and third persons "indicates command or threat or promise or compulsion." John B. Opdycke, *Harper's English Grammar* 111 (1966). The simple third person future tense of the verb "to terminate" would be "will terminate." Moreover, to limit the Amendments to a prospective application would render the Amendments meaningless. The 1991 Amendments apply only to cases pending and filed between the date of their enactment and November 15, 1992. If the Amendments were to apply only for this brief period—that is, prospectively and only until November 15, 1992—then their intended effect to augment the Department of Education's ability to recover defaulted student loans would be insubstantial if not nil. Indeed, the court cannot conceive of any logical reason why Congress would lift limitations statutes for this brief period unless the Amendments were to be applied retroactively so as to revive barred claims. Davis's argument that the 1991 Amendments apply prospectively only is without merit.

The legislative history further supports this conclusion. During the Congressional debates, a sponsor of the 1991 Amendments explicitly addressed their retroactive application:

> "Some questions have arisen regarding the running of the statute of limitations. The amendment would life (sic) the statute of limitations for all time, would apply it retroactively, and would sunset this provision on November 15, 1992."

131 Cong.Rec. H1808 (daily ed. March 19, 1991) (statement of Rep. Goodling). Admittedly, when he made these comments, the sponsor was referring to the collection of debts through income-tax offsets. This fact does not diminish the significance of the comments, however, since the 1991 Amendments apply equally to collection by income-tax offsets and collection through litigation.

Finally, the holding of the United States Supreme Court in *International Union of Electrical, Radio and Machine Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), warrants the conclusion that the 1991 Amendments not be limited to prospective application. There, the Supreme Court was confronted with the question of whether a new statute of limitations extending the time a person may file a charge with the Equal Employment Opportunity Commission could revive a charge already barred by the old limitations statute. The enactment language in the new statute was as follows:

> "The amendments made by this Act to section 706 of the Civil Rights Act of 1964 shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act and all charges filed thereafter."

Section 14 of the Equal Employment Opportunity Act of 1972, 86 Stat. 113. The Court had no hesitancy in concluding that this language applied retroactively to revive a charge time-barred under the old statute. 429 U.S. at 241–42, 97 S.Ct. at 449–50. *See also United States v. Menatos*, 925 F.2d 333, 335 n. 2 (9th Cir.1991) (1985 Amendments, which contain language similar to that in the 1991 Amendments, interpreted to apply retroactively to revive student-loan collection actions previously barred by law); *United States v. Hunter*, 700 F.Supp. 26 (M.D.Fla.1988) (same). Because the language in the 1991 Amendments closely resembles that which

the Supreme Court addressed in *Robbins & Myers,* the 1991 Amendments should be similarly applied retroactively to revive time-barred claims.

Davis further argues that, if the 1991 Amendments apply retroactively to revive barred claims, they revive only those claims for which the statute of limitations had run after April 7, 1986. To support her argument, Davis notes that the 1991 Amendments provide that they "shall be effective as if enacted by the Consolidated Omnibus Budget Reconciliation Act of 1985," of which the 1985 Amendments were a part and which had an enactment date of April 7, 1986. The government responds that Congress gave the 1991 Amendments a 1986 enactment date in order to undo the recent decision of the Fifth Circuit Court of Appeals in *Grider v. Cavazos,* 911 F.2d 1158 (1990). There, the court held that, for purposes of "income-tax-off-set-collection" procedures initiated in 1986, the ten-year time period for collection established in a Treasury Department regulation began to run from the date of the debtor's default on the loan while it remained in the hands of the original lending institution rather than from the date of the assignment of the loan to the Department of Education. The government argues that, absent the 1991 Amendments, the *Grider* decision would have required the Department to return millions of dollars in loan funds collected from defaulted borrowers since 1986. Davis counters that interpreting the 1991 Amendments to be completely retroactive and to revive barred claims, as advanced by the government, would, by itself, redress the effect of *Grider* and there would no need to give the Amendments a 1986 enactment date.

Giving the Amendments a retroactive enactment date and giving them retroactive application may not necessarily be synonymous, however. Retroactive application means in general that pending and future litigation would give current effect to the Amendments irrespective as to when the underlying events arose. But retroactive enactment, in which the Amendments are viewed as having actually been enacted in 1986, could conceivably offer different legal implications, in that past events outside the context of pending and future litigation could now be subject to reexamination and reopening in light of the Amendments. In any event, the court need not wrestle with the possible differences, broad or subtle, between the two concepts. The court is convinced that there is a much more simple and direct reason why Congress chose to give the 1991 Amendments an enactment date of April 7, 1986. Because the provisions of the 1991 Amendments not only replaced but actually undid and supplanted the statute-of-limitations provisions of the 1985 Amendments, Congress logically gave the 1991 Amendments the same enactment date as that of the 1985 Amendments: April 7, 1986.

In summary, the court concludes, first, that the 1991 Amendments eliminating statutes of limitations for collection of defaulted student loans apply retroactively to revive claims time-barred under previous statutes of limitations and, second and more specifically, that, because of the 1991 Amendments, the government's efforts to collect Davis's defaulted loan through judicial means are not time-barred.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That plaintiff United States of America's motion for summary judgment, filed on September 26, 1991, be and it is hereby granted to the extent that it is DECLARED that the statute-of-limitations defense asserted by defendant Charlotte J. McClendon Davis is invalid; and

(2) That defendant Davis's motion for summary judgment, filed October 10, 1991, be and it is hereby denied as to this issue.