UNITED STATES of America, Plaintiff,

v.

**Charlotte J. McClendon DAVIS, Defendant.**

**Civ. A. No. 91–T–868–N.**

United States District Court, M.D. Alabama, N.D.

Feb. 22, 1993.

Order March 8, 1993.

James E. Wilson, U.S. Atty., Patricia Conover, Montgomery, AL, for U.S.

Lawrence Gardella, Montgomery, AL, for Charlotte J. McClendon Davis.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

In this lawsuit, plaintiff United States of America seeks to recover a defaulted student loan from defendant Charlotte J. McClendon Davis. The court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1345. On June 29, 1992, this court entered an order holding that, as a result of the 1991 Amendments to the Higher Education Act of 1965, the government's lawsuit was not time-barred.[1] *See United States v. Davis,* 801 F.Supp. 581 (M.D.Ala.1992) (Thompson, J.). On November 9, 1992, a non-jury trial was held to determine whether the government is entitled to collect on Davis's loan. Based on the evidence presented at trial, the court concludes that the government is entitled to collect from Davis the entire amount of her defaulted student loan plus interest and costs.[2]

### I.

At trial, Davis maintained that she neither applied for the student loan at issue in this case nor did she execute the promissory note to secure the loan. She also contended that she never received the proceeds of the loan nor did she receive any educational services from the school. However, based on the evidence presented at trial, the court finds the facts are as follows.[3]

In December 1972, Davis applied for a student loan of $1,475 to enroll in a correspondence course offered by the Institute for Continuing Education. She also executed a promissory note to secure the loan from the Beverly Hills National Bank in California. Pursuant to Davis's signed authorization, the bank paid the loan proceeds directly to the school. The United States Department of Education guaranteed the loan under the Federally Insured Student Loan Program (FISLP), as authorized by the Higher Education Act of 1965.[4]

According to the terms of the loan, Davis's note became due in October 1974, nine months after Davis ceased to be at least a half-time student. In August 1974, Davis

---

1. The Act is codified at 20 U.S.C.A. §§ 1001–1146a, as amended. The 1991 Amendments were enacted as Section 3(a) of Pub.L. No. 102–26, codified at 20 U.S.C.A. § 1091a(a).

2. The government is seeking $2,844.01 ($1,475 principal, $1,282.01 interest, and $87 in administrative costs) plus interest accruing at the rate of 7% per annum from June 3, 1991, to the date of judgment and administrative costs accruing at the rate of $3.00 per month.

3. Because the evidence was more developed at trial, the facts regarding Davis's execution of the promissory note and when the note came due differ somewhat from the facts presented in the court's earlier order in this case. *See Davis,* 801 F.Supp. at 582.

4. Higher Education Act of 1965, Pub.L. No. 89–329, Title IV–B (codified as amended at 20 U.S.C.A. §§ 1071–1087–2).

was sent payment instructions and a payment book by Avco Savings and Loan Association (AVCO), which had been assigned the loan by the Beverly Hills National Bank. Davis failed to make her first payment on October 1, 1974. Between October 1974 and February 1975, AVCO sent a collection notice to Davis each month. Because of Davis's failure to make any payments on her student loan, AVCO filed a claim for federal insurance on Davis's defaulted loan. In October 1978, the United States Department of Education paid AVCO's claim for insurance, and AVCO assigned to the Department of Education all rights to the note. Between October 1978 and March 1979, the Department of Education made several attempts to contact Davis about her defaulted loan. In 1990, the Department again initiated efforts to collect on the loan, but without success. Because of Davis's failure to make any payments on her loan, the United States filed this lawsuit in June 1991.

## II.

■ In her trial brief, Davis raised two affirmative defenses to be applied in the event that the court found that she had applied for and received the loan. First, Davis contends that the government is not entitled to collect on the loan because of a lack of consideration. Davis maintains that the school either failed to provide any educational services or provided services that were not adequate to entitle it to the proceeds of the student loan at issue in this case. According to Davis, under 34 C.F.R. § 682.518 (1981), the government is required to refrain from collecting against her to the extent of any defense that she might have against the school.[5] However, the evidence presented at trial does not convince the court that there was, in fact, lack of consideration. Davis, as stated, applied for and received the loan through her school. However, because there is no evidence that she ever enrolled in the school, the court cannot say that her failure to receive an education was not her own fault. The court, therefore, rejects this defense.[6]

■ Second, Davis maintains that the government's suit is barred by the doctrine of

---

**5.** Section 682.518, which was in effect at the time the government paid the bank's default claim, provided in pertinent part as follows:

"After paying a default claim on a FISLP loan, the Secretary attempts to collect from the borrower and any valid endorser in accordance with the Federal Claims Collection Standards. The Secretary attempts collection of all unpaid principal and accrued interest, except in the following situations:

"(a) The borrower has a valid defense on the loan. In this situation, the Secretary refrains from collection against the borrower or endorser to the extent of any defense that either may have."

34 C.F.R. § 682.518 (1981). The Department of Education repealed this regulation in 1986. *See* 51 Fed.Reg. 40,886 (1986).

**6.** Because Davis did not present convincing evidence to support her defense of lack of consideration, the court need not reach the question whether Davis is entitled to raise her school-related defense against the government either under 34 C.F.R. § 682.518 (1981), *see, e.g., United States v. Griffin*, 707 F.2d 1477 (D.C.Cir.1983), or under an "origination theory," which would provide an independent basis for raising a school-related claim against the government. *See, e.g., Jackson v. Culinary School of Washington*, 788 F.Supp. 1233, 1241 (D.D.C.1992); *Tipton v. Secretary of Educ.*, 768 F.Supp. 540, 569–570 (S.D.W.Va.1991).

However, the court does note that contrary to the government's assertions, *United States v. Olavarrieta*, 812 F.2d 640 (11th Cir.) (per curiam), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), does not stand for the general proposition that a student loan borrower may not assert against the government a claim she may have against the school regarding repayment of a defaulted student loan. The court of appeals merely affirmed the district court's dismissal of a student's third-party complaint against the board of regents of his school in response to the government's action to recover a defaulted student loan. The court simply held that the defendant could not properly raise an independent claim for indemnification based on theories of breach of contract and fraud against the board of regents under Rule 14(a) of the Federal Rules of Civil Procedure. The court did *not* hold that the defendant could not raise these school-related *defenses* against the government. In fact, the district court stated that the proper way for the defendant to pursue his defenses was to make them "against the government, not the school." According to the district court, "Once the defaulted loan is paid, the government as guarantor, is the party [the student] must deal with, not the University or the bank." *United States v. Olavarrieta*, 632 F.Supp. 895, 899 (S.D.Fla.1986).

laches. Davis contends that the government's failure to institute this proceeding within a reasonable time after paying the bank's default claim has denied her a full and fair opportunity to present any defenses she might have to repaying her loan, such as her assertion of lack of consideration. However, the doctrine of laches is generally inapplicable to a suit brought by the United States to enforce its rights.[7] *Costello v. United States,* 365 U.S. 265, 281, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961); *United States v. Summerlin,* 310 U.S. 414, 415, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *United States v. Menatos,* 925 F.2d 333, 335 (9th Cir.1991); *United States v. Arrow Transp. Co.,* 658 F.2d 392, 395 (5th Cir. Unit B Oct. 1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982).[8]

In *S.E.R., Jobs for Progress, Inc.,* 759 F.2d 1, 7 (Fed.Cir.1985), the court of appeals noted that some relaxation of the principle that laches is not a defense against the government may be developing and that exceptions to the rule might be approved in certain cases. However, the court in *S.E.R.* also recognized that most courts that have considered the issue have found that the facts did not justify invoking an exception to the rule. Moreover, the court noted that many courts have continued to adhere to the traditional rule that laches is not a defense against the government, absent a clear manifestation of congressional intent to the contrary. *See, e.g., Arrow Transp. Co.,* 658 F.2d at 395.

■ In this case, Congress has not indicated that the United States should be subject to the defense of laches in actions brought to recover defaulted student loans. In fact, Congress's retroactive elimination of all statutes of limitations for actions to recover defaulted student loans appears to indicate precisely the opposite intent. That is, by retro-actively eliminating all statutes of limitations and reviving claims previously time-barred by statutes of limitations, *see Davis,* 801 F.Supp. at 583–84, Congress sought to erase obstacles that the government might encounter in collecting defaulted loans. To apply the doctrine of laches in this case would thus undermine Congress's intent in eliminating the statute of limitations.

■ Finally, even if the doctrine of laches were applicable in this case, Davis has failed to prove the elements necessary to prevail on the defense of laches, an equitable doctrine committed to the sound discretion of the trial court. *Envtl. Defense Fund v. Alexander,* 614 F.2d 474, 477–78 (5th Cir.), *cert. denied,* 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980). To invoke the doctrine of laches, a "defendant must show: (1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Id.* 614 F.2d at 478. *See also Ambrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1545 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). A classical showing of undue prejudice would be that the delay "has subjected [the defendant] to a disadvantage in asserting and establishing his claimed right or defense." *Law v. Royal Palm Beach Colony, Inc.,* 578 F.2d 98, 101 (5th Cir.1978).

Although Davis has shown a significant delay in the government's assertion of its claim against her—the government was assigned the loan in 1978 but did not institute judicial action to recover the defaulted loan until June 1991—the court recognizes that to some extent the government's delay is excusable. For a period of time, the government was unable to institute a judicial enforcement

---

7. The principle that laches cannot be asserted as a defense against the government originally derived from notions of royal privilege. *Guaranty Trust Co. v. United States,* 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938). However, in modern times, the reason underlying the principle has been attributed to "the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." *United States v. Costello,* 365 U.S. 265, 281, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961) (citation omitted).

8. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the post-September 30, 1981 decisions of Unit B of the former Fifth Circuit. *Cf. Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

action because a six-year limitations period was in effect that barred the action. Prior to the passage of the 1991 Amendments to the Higher Education Act of 1965, which eliminated all statutes of limitations, the 1985 Amendments to the Act established a six-year limitations period from the date of assignment of the student loan to the Department of Education.[9] Additionally, before the 1985 Amendments were in effect, courts applied the federal statute of limitations period for actions brought by the United States on contracts in writing, 28 U.S.C.A. § 2415, to actions to recover defaulted student loans. The limitations period under this statute was also six years, which courts calculated from the date of assignment. *See, e.g., United States v. Olavarrieta,* 812 F.2d 640, 644 (11th Cir.) (per curiam), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987); *United States v. Tilleraas,* 709 F.2d 1088 (6th Cir. 1983); *United States v. Bellard,* 674 F.2d 330 (5th Cir.1982). Therefore, prior to the passage of the 1991 Amendments, which revived the government's claim against Davis, the government was time-barred from bringing any action after October 1984. However, the government could have initiated a suit at any time between October 1978 and October 1984, yet it failed to do so.

But more importantly, Davis has failed to demonstrate that she was materially prejudiced by the government's delay in bringing the enforcement action. Although Davis asserts a defense of lack of consideration, the court cannot say that her failure to receive an education was not her own fault—that is, because she failed to enroll—rather than the school's. Moreover, she has failed to indicate how the government's delay in bringing this action has affected this defense. The defense appears to be merely one of conjecture and speculation, rather than grounded in specific facts or evidence. This conclusion is supported by the fact that there is no evidence that Davis ever pursued any claims that she might have had against the school. She does not appear to have raised this issue either with the bank when it first attempted to collect the loan or with the government when it was assigned the loan and made its own collection efforts. Therefore, even if the court were to apply the doctrine of laches in this case, Davis has not demonstrated sufficient material prejudice to prevail on this defense.[10]

Accordingly, for the reasons discussed above, the court concludes that the government is entitled to recover from Davis the total amount borrowed plus interest and costs.

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the court's memorandum opinion entered this date, it is the OR-

---

9. The Higher Education Amendments of 1985 were enacted as Section 16033 of the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272.

10. *Compare with United States v. Rhodes,* 788 F.Supp. 339 (E.D.Mich.1992). There, the court found that the defendant was materially prejudiced by the government's delay in bringing an enforcement action to collect a defaulted student loan. However, in *Rhodes,* the defendant's defense to the collection effort was that the debt had been paid in full. This defense was supported by the government's admission that the defendant had repaid more than two-thirds of his loan and that less than one-third was outstanding. But because of the delay in bringing the action, neither the defendant nor the government could locate or authenticate records of the lender. Both the lender and the defendant's school had dissolved and ceased to exist. The defendant was also unable to locate any of his personal records. As a result, the government could not produce adequate evidence showing that a debt was still owed and the defendant could not produce any evidence proving that he had paid the debt. The government also failed to produce documentation of any collection efforts either by the lender or the government prior to the initiation of the lawsuit.

In this case, in contrast, Davis's inability to present her defense of lack of consideration does not appear to stem from the government's delay in bringing the action or a lack of proper documentation on either side. Rather, it appears to stem from the absence of any credible evidence to support the contention. Thus, it is likely that Davis would have been unable to present a sufficient defense even if the government had not delayed in bringing the action. The court also notes that in this case, unlike in *Rhodes,* the government has provided the bank's records of the loan and documentation of the bank's collection efforts, even though both Davis's bank and her school have ceased to exist.

DER, JUDGMENT, and DECREE of the court:

(1) That judgment is entered in favor of plaintiff United States and against defendant Charlotte J. McClendon Davis; and

(2) That plaintiff United States have and recover from defendant Davis the sum of $2,844.01, plus administrative costs accruing at the rate of $3.00 per month from June 3, 1991, to the date of judgment, and interest accruing at the rate of 7% per annum from June 3, 1991, to the date of judgment, and at the legal rate of interest thereafter until paid in full.

It is further ORDERED that costs are taxed against defendant Davis, for which execution may issue.

## ORDER

This cause is now before the court on defendant Charlotte J. McClendon Davis's motion to amend the court's judgment, pursuant to Rule 59 of the Federal Rules of Civil Procedure. On February 22, 1993, the court entered a memorandum opinion and judgment in this case, holding that plaintiff United States was entitled to recover from Davis the full amount of her defaulted student loan plus costs. Davis requests that the court reconsider its ruling and enter judgment in favor of Davis. For the reasons that follow, the court finds that Davis's motion to amend judgment should be denied.

In this litigation, Davis has presented two alternate versions of the facts surrounding the student loan at issue in this case. Initially, Davis admitted that she signed the student loan application and promissory note. However, she maintained that *she* never intended to obtain a student loan to enroll in the Institute of Continuing Education. Rather, she signed the note only as a cosigner on her former husband's student loan; the proceeds of the loan were for her husband's education. At trial, however, Davis maintained that she neither signed the loan application nor the promissory note. Although Davis admitted that the signature on each document looked like her signature, Davis contended that she did not execute either document.

As stated in its memorandum opinion, the court concludes based on the evidence pre-sented at trial that Davis applied for a student loan to enroll in the Institute for Continuing Education and executed the promissory note to secure the loan. Moreover, contrary to Davis's suggestion, the court's statement in its opinion that there is no evidence that Davis ever enrolled in the school was not meant to indicate that the court accepts Davis's initial contention in this lawsuit that the only reason she signed the loan was as a co-signer for her husband. The court's opinion may not have made it clear, but in finding that Davis applied for and received a loan to attend the Institute for Continuing Education, the court also concludes that Davis did so for her own benefit. In other words, the court finds that she did not execute the loan on behalf of her husband, but on her own behalf. Indeed, the supporting documents submitted by the government in the case indicate that Davis's former husband applied for and received his own loan to attend the Institute for Continuing Education at the same time as Davis executed her loan.

The court's statement that there is no evidence that Davis ever enrolled in the school was made in the context of the court's discussion of Davis's affirmative defense of lack of consideration. Davis maintains that she never received any educational services from the Institute for Continuing Education. That may very well be the case. But as the court stated in its opinion, because there is no evidence regarding Davis's enrollment at the school, it may also be that Davis's failure to receive an education was her own fault, not the school's. For example, Davis may have simply failed to enroll at the school or to have followed through with the course. Because there is no convincing evidence regarding the school's failure to provide educational services, the court has no choice but to reject Davis's defense of lack of consideration.

Accordingly, for the reasons discussed above, it is ORDERED that defendant Charlotte J. McClendon Davis's motion to amend judgment, filed on March 4, 1993 is denied.