**UNITED STATES of America, Plaintiff,**

v.

**Jerry P. CAWLEY, Defendant.**

No. 91–76982.

United States District Court,
E.D. Michigan, S.D.

March 31, 1993.

Elizabeth, Wallace, Fleming, Detroit, MI, for plaintiff.

Jerry P. Cawley, Ypsilanti, MI, for defendant.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This matter came before the Court upon cross motions for summary judgment. Plaintiff, the United States, brought this action against Defendant, Jerry Cawley, for collection of defaulted student loans. The government has moved for summary judgment and Cawley has filed cross motions for summary judgment[1] based on various defenses that he claims bar the government's suit. For the reasons set forth below, summary judgment in favor of the United States is hereby granted.

### I. Facts

Between September 1975 and January 1977, Cawley borrowed a total of $5,000.00

---

1. Defendant Cawley's motion for summary judgment was asserted in his Response to Plaintiff's motion as well as his pleadings entitled as follows: (1) motion in support of the res judicata claim preclusion affirmative defense; (2) motion in support of the res judicata issue preclusion, lack of clean hands equitable estoppel or waiver, and laches; (3) motion in support of the objection to nonjoinder of compulsory counterclaims. Because the Plaintiff's motion for summary judgment is granted, Cawley's appeal of the magistrate's order denying his motion to compel discovery is moot.

from the University of Michigan under the National Direct Student Loan Program. Cawley admits that he took these student loans. Answer para. 4. The terms of the notes executed by Cawley required that he begin repayment of the loans nine months after he ceased to carry one-half the usual full time academic workload. Cawley does not contest the fact that by April 30, 1979, he ceased to carry the required one-half workload and that he has failed to pay the loans.

After Cawley defaulted on the loans, the University assigned the notes to the Department of Education. The government collected $132.00 by way of federal and state tax refund offsets and applied them against the loans. As of August 28, 1992, the balance due on the loans was $6,597.63, which includes $5,000.00 in principal, $1,510.63 in interest, and $87.00 in administrative costs. Interest continues to accrue at the rate of 3% per annum. Gentry Declaration, para. 4 & 9.

Cawley, who proceeded pro se in this matter, asserted the following affirmative defenses, all of which he contends bar the government's suit:

1. statute of limitations
2. failure to join a compulsory counterclaim
3. res judicata/claim preclusion
4. collateral estoppel/issue preclusion
5. laches
6. lack of clean hands, equitable estoppel, or waiver
7. statute of frauds
8. misconduct prohibiting performance
9. frustration of purpose
10. impossibility or impracticability of performance

■ A rendition of the facts upon which Cawley bases his defenses is difficult, because Cawley's pleadings are voluminous, rambling and vague. However, because pro se plaintiffs such as Cawley are held to a less stringent pleading standard, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), the Court has liberally construed his pleadings. A liberal reading of Cawley's pleadings reveals that most of his defenses arise from circumstances that were the subject of two prior federal lawsuits.

In 1983, Cawley filed a lawsuit against the U.S. Attorney General and the Director of the National Science Foundation, as well as parties unrelated to the federal government, including the Michigan Attorney General, the University of Michigan Board of Regents, and various individuals associated with the University.[2] The complaint was hundreds of pages long and alleged claims based on faculty absence from classes,[3] professional malpractice purportedly violating academic freedom, fraud and negligence by the University in its administration of a scientific research grant, torts arising out of allegedly unconstitutional University residency requirements, tortious interference with an employment contract, tortious interference with academic freedom, and "psychic eavesdropping." The district court struck the original complaint, and Cawley filed an amended complaint. The court later dismissed the amended complaint without prejudice, and the Sixth Circuit affirmed the district court's decision.

In 1987, Cawley filed his second federal lawsuit.[4] This suit set forth four counts against the Director of the National Science Foundation in his official capacity.[5] The first count against the National Science Foundation alleged negligence or an intentional tort due to the publication of a book containing an essay purportedly coauthored by Cawley. The book failed to acknowledge Cawley's coauthorship. The second count alleged taking of copyright rights without due process based on the same failure to acknowledge coauthorship. The third count alleged negligence or an intentional tort due to the Foundation's failure to support Cawley's complaint alleging academic fraud and misuse of federal grant monies. Finally, Cawley's 1987 suit

2. The 1983 lawsuit was captioned *Cawley v. Board of Regents, et al.* No. 83–6046, E.D.Mich.

3. Cawley refers to faculty absence from classes as "faculty hookey."

4. The 1987 lawsuit was captioned *Cawley v. Howard Swearer, et al.,* No. 87–70017, E.D.Mich.

5. This lawsuit also set forth 20 counts against other defendants who were unrelated to the federal government.

alleged that he suffered personal injury due to the Foundation's promotion of dangerous "psychic research," including "psychic eavesdropping." Ultimately, the claims against the government were dismissed.

## II. Standard for Summary Judgment

In considering a motion for summary judgment, the Court may grant the motion only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As the Supreme Court ruled in *Celotex*, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The court must view the allegations of the complaint in the light most favorable to the non-moving party. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

■ However, the mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue' for trial." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) (citing *Matsuchita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III. Analysis

### A. Statute of Limitations

■ Cawley contends that the government is barred from collecting on his student loans by federal and state statutes of limitations.

However, recent federal legislation mandates that there is no statute of limitations for student loan collection actions. 20 U.S.C. § 1091a(a) (§ 484A(a) of the Higher Education Act of 1965, as amended by § 3 of P.L. 102–26 of the Higher Education Technical Amendments of 1991). This statute applies retroactively and effectively revives old claims. *See, e.g., U.S. v. Davis*, 801 F.Supp. 581 (M.D.Ala.1992); *U.S. v. Blair*, No. 8–CV–91–00587, 1992 WL 506087 (D.Neb. July 10, 1992).

Moreover, the government timely filed this lawsuit under the formerly applicable federal statute of limitations. The statute of limitations that formerly applied provided a limitation period of six years, beginning at the date the loan was assigned to the Department of Education. 20 U.S.C. § 1091a(a)(4); *U.S. v. Menatos*, 925 F.2d 333 (9th Cir.1991). The University of Michigan assigned Cawley's loans to the Department of Education on October 31, 1986. The government filed this collection action on December 19, 1991, within the six year time period.

### B. Failure to join a compulsory counterclaim; res judicata/claim preclusion; collateral estoppel/issue preclusion; laches; lack of clean hands, equitable estoppel, or waiver

Based on his 1983 and 1987 lawsuits, Cawley has raised the defenses of failure to join a compulsory counterclaim; res judicata/claim preclusion; collateral estoppel/issue preclusion; laches; and lack of clean hands, equitable estoppel, or waiver. Cawley asserts that "[t]hese defenses ought to be construed as all going to the identical point from alternative legal routes." Cawley's Supporting Brief for the Motion in Support of the Objection to Nonjoinder of Compulsory Counterclaims Affirmative Defense, p. 10. Cawley argues that the government was required to bring its claim on the student loans in the 1983 and 1987 federal lawsuits and that, because the government failed to do so, this collection action should be barred.

### 1. Compulsory Counterclaim

■ Under Federal Rule of Civil Procedure 13(a), a compulsory counterclaim must

be filed or it is waived. A counterclaim is compulsory if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim. The government's student loan collection claim does not arise out of the same occurrences that gave rise to Cawley's 1983 and 1987 lawsuits. These lawsuits were based on alleged torts and constitutional violations arising from Cawley's research at the University of Michigan and the administration of federal grant monies. Because the student loans at issue here were not the subject of prior litigation, the government's claim was not a compulsory counterclaim in the prior actions. Thus, the government is not barred from bringing this suit.

## 2. Res Judicata and Collateral Estoppel

■ Nor is the government barred from bringing this suit based on Cawley's other legal theories. Under the doctrine of res judicata or claim preclusion, a final judgment on the merits is conclusive as the rights of the parties and their privies, and as to them, constitutes an absolute bar to a subsequent action involving the same claim. It also precludes litigating a claim or defense that should have been raised, but was not, in an action previously adjudicated. *Gargallo v. Merrill Lynch, Pierce, Finner & Smith*, 918 F.2d 658 (6th Cir.1990). Under the doctrine of collateral estoppel or issue preclusion, issues actually litigated and necessarily decided may not be relitigated in a different action between the same parties. *Id.* Again, the 1983 [6] and 1987 suits involved different claims and different issues than the issue presented here. The matter of Cawley's default on his student loans was not adjudged or litigated in the prior actions. Thus, res judicata and collateral estoppel do not apply.

## 3. Laches

■ The equitable doctrine of estoppel by laches also does not bar the govern-

ment's suit. A party is barred by laches from bringing a suit where the party failed to diligently act on his claim, and the opposing party was prejudiced by the delay. *General Electric Co. v. Sciaky*, 187 F.Supp. 667 (E.D.Mich.1960), *aff'd*, 304 F.2d 724 (6th Cir. 1962); *Badon v. General Motors Corp.*, 188 Mich.App. 430, 470 N.W.2d 436 (1991), *appeal denied*, 440 Mich. 871, 486 N.W.2d 738 (1992). In this case there is no evidence that the University of Michigan or the United States government failed to diligently pursue collection of the student loans. As discussed above, the government was not obligated to bring a counterclaim based on the defaulted loans in the prior lawsuits, and the government brought this action within the formerly applicable six year statute of limitations. In addition, Cawley has failed to bring forth any evidence that he was prejudiced by the alleged delay.[7]

## 4. Estoppel

■ Cawley's defense of "lack of clean hands equitable estoppel or waiver" is similarly without merit. A party may prove equitable estoppel by showing that he reasonably relied to his detriment on a misrepresentation of material fact. *United States v. Swanson*, 618 F.Supp. 1231, 1240 (E.D.Mich. 1985). However, estoppel is rarely a valid defense against the government absent some proof of affirmative misconduct by the government. *Id.*

■ Cawley's lack of clean hands/estoppel/waiver argument is illogical. He contends that he reasonably relied on the government's honest administration of grievances, and that because the government failed to hear his grievances relating to the National Science Foundation's grant for his research at the University of Michigan, the government should be barred from collecting on his student loans. Cawley's claims re-

---

**6.** It should also be noted that there was not final decision on the merits in the 1983 action, because it was dismissed without prejudice.

**7.** Cawley claims that the government's delay in bringing suit harmed him by damaging his credit rating and his job opportunities, thereby precluding him from repaying his loans. It is unclear

how any delay in bringing a collection action could have resulted in these consequences, and Cawley has brought forth no evidence to support these leaps in logic. In fact, it appears that Cawley benefitted by the delay of this collection action, as he has had the use of the borrowed funds at a low interest rate, 3% per annum.

garding the administration of the research grant are wholly unrelated to his obligation to repay his student loans. He has brought forth no evidence of detrimental and reasonable reliance on a material misrepresentation or on government misconduct relating to his student loans.[8]

### C. Statute of Frauds

Cawley appears to confuse the law regarding the statute of frauds with the statute of limitations. In support of his statute of frauds defense, he states, "no non-written or written revival of the limitation date on the present NDSL claims was ever granted by Cawley." The issue of a "limitation date" is a time bar issue addressed in the discussion of the statute of limitations above. The statute of frauds is a doctrine that provides that certain contracts must be in writing to be enforceable. Mich.Comp. Laws Ann. § 566.-132. Here, the government seeks to enforce written promissory notes, thus the statute of frauds does not preclude recovery.

### D. Misconduct prohibiting performance; frustration of purpose; and impossibility or impracticability of performance

Cawley's defenses of misconduct prohibiting performance, frustration of purpose, and impossibility or impracticability of performance are all based on the same allegations. See Response of Defendant Cawley to the 8-28-1992 USA Plaintiff Summary Disposition Motion Argument, pp. 18-21. Cawley contends that the University and the National Science Foundation failed to hear his grievances regarding faculty absence from classes and negligent or fraudulent administration of federal grant monies. He claims that the failure to hear his grievances caused the following consequences:

[The failure to hear his grievances] breached the NDSL loan agreement, prematurely

causing the NDSL loan debt to come due, while leaving Cawley with no means of egress to complete his Ph.D. work at the U-M and enter the job market in order to pay back the loans, while saddling Cawley with (1) over a decades's lost time in administrative grievances and lawsuits, (2) a bad credit rating foreclosing other borrowing, (3) around $30,000 or more in upfront grievance litigation costs, (4) some $100,-000 plus loses (sic) in "lost wages," and (5) a hostile U-M Ph.D. training program environment.

Response of Defendant Cawley to the 8-28-1992 USA Plaintiff Summary Disposition Motion Argument, p. 18. Despite his allegations, Cawley brings forth no evidence that the failure to hear his grievances was a breach of his student loans or that any alleged government misconduct actually prevented him from repaying his student loans.

Cawley may intend to argue that somehow he is not liable on his student loans due to alleged University misconduct or due to the University's failure to award him his Ph.D. However, courts have rejected this argument. See, e.g., Graham v. Security Savings and Loan, 125 F.R.D. 687 (N.D.Ill.1989) (students do not have private right of action under Higher Education Act for rescission of student loans on ground that college representatives made misrepresentations), aff'd sub nom. Veal v. First American Savings Bank, 914 F.2d 909 (7th Cir.1990); U.S. v. Olavarrieta, 812 F.2d 640 (11th Cir.) (whether student is entitled to relief on claim university wrongfully failed to award him degree is irrelevant to student's liability on defaulted student loan), cert. denied, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987).

### IV. Conclusion

For the reasons set forth above, being fully advised in the premises and having read the pleadings, the Court hereby GRANTS Plaintiff's motion for summary judgment and

8. Cawley also contends that he relied on the government's failure to bring a counterclaim for collection of the student loans in the prior feder-

al lawsuits. Such reliance was unreasonable, was not based on any material misrepresentation

DENIES Defendant's motions [9] for summary judgment.

or affirmative government misconduct, and did not result in any detriment to Cawley.

9. See footnote 1, *supra*.